Timothy McCarl, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Nurse Examiners, Respondent.

Argued November 3, 1978, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three.

*John R. Wingerter,* with him *Carney, Good, Brabender & Walsh,* for petitioner.

*James P. Deeley,* with him *Louis B. Rubin,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE DISALLE, January 12, 1979:

Timothy McCarl (Appellant), a registered nurse, has appealed from an order of the State Board of Nurse Examiners (Board), formally reprimanding him for violating Section 14 of The Professional Nursing Law (Law), Act of May 22, 1951, P.L. 317, *as amended,* 63 P.S. §224, which provides that the Board "may suspend or revoke any license" in any case where it finds that a licensee has "wilfully violated" any of its regulations. Appellant was found to have administered an anesthetic in the absence of a directing physician as is required by the regulation presently found at 49 Pa. Code §21.17.

Appellant challenges this determination, arguing first, that the finding of wilful violation of a regulation of the Board is not supported by substantial evidence; second, that the Board may only *suspend or revoke* a license, but is without authority to *formally reprimand* a violator; and third, that he was denied due process of law in that (1) the Board "affirmatively" misled him in part of the proceedings, (2) not all the Board members rendering the adjudication and order actually "heard" the evidence and (3) the administrative procedure employed in this case embraced an improper commingling of the investigative, prosecutorial, and adjudicative functions.

The record clearly supports the Board's determination that Appellant wilfully violated a regulation of the Board.[1] It establishes that Appellant was aware of his responsibility to secure the presence of a directing physician; that he knew that the physician whom he sought to have present was not, in fact, present during the administration of the anesthetic;[2] and that Appellant was aware that the physician who was present did not know that he was about to administer the anesthetic.[3]

Turning to the second argument, we note once again that Section 14 of the Law provides that the Board "may" suspend or revoke a license if a licensee is found to have violated a regulation of the Board. The Board found that a violation occurred. Clearly, then, it could have revoked or suspended Appellant's license. It chose, nevertheless, to be lenient and impose a formal reprimand—a sanction not specifically

---

[1] Appellant argues that the Board failed to *specifically* find that he had "wilfully" violated the law. The record indicates that the Board concluded that Appellant violated the law and then simply reprinted the substance of the relevant statute and regulation wherein the reference to "wilfulness" is made. We do not believe, therefore, that the Board failed to make this necessary finding. In any event, insofar as the term "wilful" connotes an intentional or voluntary act, the Board's further conclusion that Appellant was, in effect, aware of his non-compliance with the applicable regulation satisfies the "wilfulness" standard. *See Commonwealth v. Hubbs*, 137 Pa. Superior Ct. 244, 8 A.2d 618 (1939).

[2] It is significant that even though Appellant admitted that this physician was not present, Appellant nevertheless noted in the anesthesia record, in his own handwriting, that this physician *was* present and supervising.

[3] This physician's deposition, upon which Appellant relied so heavily, makes it abundantly clear that Appellant made no effort to make the physician aware of what was happening; that the physician had absolutely no inkling of what was happening; and that the physician, in fact, had his back to Appellant when the anesthetic was administered.

referred to in the Law. Given the power to suspend or revoke, certainly the Board had authority to invoke the lesser penalty.

Turning finally to the due process contentions, we note that the first question, as to whether the Commonwealth affirmatively misled Appellant, and thereby prejudiced his defense, relates to the fact that the Board, in an apparent attempt to afford Appellant every possible opportunity to make his case, scheduled another hearing to permit him to introduce into evidence the deposition of a physician. Appellant now asserts that the Commonwealth prejudiced his defense by affirmatively misleading him in a series of allegedly contradictory oral and written notices regarding the hearing.

Having reviewed the procedure employed by the Board to accommodate Appellant, we are hard pressed to imagine how he may have been misled. Although the amended citation and notice of hearing, and the specific letter wherein Appellant was notified that a further hearing would be held, referred to the purpose thereof in general terms, a review of the record as a whole indicates that the sole purpose of the additional hearing was to permit Appellant to introduce the deposition into evidence. Indeed, the amended citation and notice of hearing specifically spells out the genesis of the additional hearing, referring to Appellant's chief objection in the original hearing and the fact that the deposition in question had been taken in furtherance thereof. We believe, therefore, that Appellant has failed to demonstrate the nature or extent of the prejudice he allegedly suffered. *See State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974).

Appellant next argues that he was denied due process of law in that several of the Board members

who participated in the decision did not "hear" all the evidence—*i.e.,* they were not actually present at both hearings. The law is clear that regulatory board members who participate in the ultimate decision need not have aurally received evidence so long as they have reviewed and given consideration to all the testimony. *See Acitelli v. Westmont Hilltop School District,* 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974). There being no suggestion that the participating Board members did not, in fact consider all the testimony, we find Appellant's argument to be without merit.[4] We affirm.

### Order

And Now, this 12th day of January, 1979, the order of the State Board of Nurse Examiners dated May 27, 1977, is hereby affirmed.

---

[4] Appellant's barely cognizable argument that the administrative procedure employed in this case embraced an improper commingling of investigative, prosecutorial and adjudicative functions is similarly without merit. It is clear that an administrative agency may aid in the performance of the investigative, prosecutorial and adjudicative functions without violating due process as long as these functions are adequately separated. *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977). There being nothing to suggest that the procedure here involved promoted any bias against Appellant whatsoever, we cannot conclude that this administrative procedure is per se violative of due process.

---

Dissenting Opinion by Judge Craig:

I must respectfully dissent on the ground that the record does not establish that the appellant nurse "willfully violated" the regulation at 49 Pa. Code §21.16 which contains the mandate:

(3)  The registered nurse administers such anesthesia under the direction and in the presence of a licensed physician or dentist.

The record shows that the surgeon witness and anesthesiologist witness held differing opinions, as to the meaning, under the regulation, of *administration* of anesthesia and the meaning of "under the direction" of a physician or dentist.

It is undisputed that a physician was present in the operating room at all times material to appellant's actions. It is also undisputed that Dr. Carter, appellant's anesthesiologist supervisor, was present in the operating room during part of the time.

Because Dr. Carter was not present when appellant initially induced the anesthesia by needle, and because the physician present at that time was not his supervisor and was not paying attention, appellant has been deemed guilty of a willful violation.

However, one of the problems causing dispute among the expert medical witnesses is the ambiguity of the term "administers" in the regulation with reference to the administration of anesthesia. Does it refer only to the initial induction of anesthesia, or does it refer to the entire procedure, from beginning to end, during part of which appellant's physician/supervisor was present? The adjudication of the Board is clearly confused on the point, sometimes using the term to refer to the initial injection and, in other places, using the broader meaning, as indicated by discussion of the "commencement of administration" of anesthesia.

With the Board itself thus approving the broader meaning, it can be seen that appellant was not guilty of any egregious falsehood when he noted "Dr. Carter present & supervising" in the anesthesia record; that statement was true during part of the administration of anesthesia, although not throughout the entire procedure.

The major confusion is over what it means to have the "direction" as well as the "presence" of a "licensed physician or dentist." The parties appeared to agree that supervision by an anesthesiologist is not necessary, particularly because the hospital has more operating rooms than anesthesiologists, indicating that the supervision of an anesthetist by a physician other than an anesthesiologist would not be unusual.

There appears to be no insistence, by the Board or by the majority of this Court, that the urology resident physician, who was present, was unqualified. Although, being present, he could have responded to any emergency, the burden of his inattention at the time of inducing anesthesia has been placed upon appellant.

I do not believe that appellant's failure to summon the resident physician to immediate involvement amounts to a willful violation.

Noting that the complaint here was filed by the surgeon, it appears that the appellant nurse was caught between the differing (albeit well-meaning) viewpoints of the surgical department and of the anesthesiology department, over the question of whether the regulation should be given a strict or liberal interpretation. The Board, by holding the penalty to a reprimand, has indicated some awareness of the difficulties faced by the appellant.

If the regulation is so unclear that experienced physicians cannot agree on its meaning, then appellant's adoption of one of the interpretations should not constitute a willful violation. The decision of the Board should be reversed.

In any event, it is hoped that the Board will use its good offices to clarify the meaning of this ambiguous regulation for the guidance of anesthetists hereafter.