City of Pittsburgh, Appellant *v.* Commission on Human Relations of the City of Pittsburgh (Diane Bonenberger), Appellee.

Argued October 7, 1981, before Judges MENCER, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

D. R. *Pellegrini*, Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.*, City Solicitor, for appellant.

*Thomas H. M. Hough*, with him *Gregory Gleason*, for appellee, Diane Bonenberger.

OPINION BY JUDGE WILLIAMS, JR., April 5, 1982:

This is an appeal by the City of Pittsburgh (appellant) from an order of the Court of Common Pleas of Allegheny County. The court affirmed a decision of the Commission on Human Relations of the City of Pittsburgh (Commission) sustaining complainant Diane Bonenberger's charge that the City had unlawfully discriminated against her by refusing to employ her because of her sex.

In August of 1978 the complainant applied for employment as a plant operator with the City's Department of Water. She successfully completed the written Civil Service examination for that position and was interviewed therefor by an assistant plant superintendent. On November 1, 1978, the director of the Water Department, upon the recommendation of the assistant plant superintendent, signed a letter appointing complainant to the position of water treat-

ment plant operator. The Personnel Department, however, vetoed the appointment.

Thereafter, Miss Bonenberger filed a complaint with the Commission, wherein she alleged that the City's failure to hire her was because of her sex. At hearings held before the Commission, she based her claim on certain questions asked her by the assistant superintendent during the interview. The City asserted that complainant's appointment was voided because her brother, Dan Bonenberger, was already employed as a plant operator in the City's Department of Water. Specifically, appellant sought to establish that Miss Bonenberger was refused employment, not because of her sex, but because of the City's anti-nepotism policy.

On September 26, 1980 the Commission rendered a decision sustaining Miss Bonenberger's complaint. The Commission found that the City had failed to hire complainant because of her sex, and that the alleged anti-nepotism policy was "vaguely expressed, not widely disseminated, not uniformly published or applied, and used as a pretext" to preclude her employment. The City was ordered to employ complainant as plant operator with full seniority and benefits retroactive to November 6, 1978. In addition, appellant was directed to reimburse complainant for all wages lost as a result of its failure to hire her, which the Commission calculated to be in the amount of $35,076.55.

The City of Pittsburgh filed a timely appeal to the Court of Common Pleas of Allegheny County, which affirmed the Commission's decision by order dated January 21, 1981. In its opinion, the court stated that the Commission's finding of sex discrimination was not supported by substantial evidence, but upheld the Commission's decision on the basis

that the City's anti-nepotism policy constituted an "unfair labor practice." The City has appealed to this Court from the aforesaid order.

Our scope of review of the Commission's decision is defined by Section 754(b) of the Local Agency Law,[1] which states in pertinent part:

> After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

The court below was bound by the same restrictions in its review of the Commission's decision. *Civil Service Commission of Philadelphia v. Saladino*, 47 Pa. Commonwealth Ct. 249, 408 A.2d 178 (1979). In the instant matter, the decisive issue for our determination is whether there is substantial evidence to support the Commission's finding that the City had unlawfully discriminated against complainant because of her sex.

A careful reading of the record reveals that the Commission, in support of its adjudication, relied exclusively upon the complainant's testimony concerning her interview with the assistant plant superintendent. The pertinent portion of this testimony is the following:

Q. Were you interviewed by somebody?

A. Mr. Beck.

Q. Who is he?

---

[1] 2 Pa. C. S. §754(b).

A. Mr. John Beck, an Assistant Superintendent, and Mr. Blair.

Q. Did Mr. Beck tell you why you were being interviewed?

A. For the position of Plant Operator.

Q. Did he call you? What happened?

A. First, I had a phone call a few days before that, if I could come out on November 1st for an interview at the Water Plant.

I went out on November 1st, met with Mr. Beck and Mr. Blair, and we discussed salary, what taxes were taken out of my pay, the job duties, and then there were certain questions Mr. Beck asked that I didn't feel would have been asked of male applicants if they had been there.

Q. Can you tell what was discussed and how it was asked?

A. There were three questions I can remember clearly. They all started out with Mr. Beck saying the Director feels, or the Director thought.

Q. Mr. Beck tells you these weren't his questions, but the Director's?

A. That's what I assumed.

Q. Tell us how he said it and the whole question.

A. He said the Director feels you might be bringing company with you when you work night shift.

Or, do you have a car, because the Director thought you might be afraid of the lonely road the plant is located on.

Or, the Director thinks you might be afraid of the loud noises the machinery makes.

Q. Did he ask you to answer those questions?

A. I told him I had been at the Water Plant before and I liked it and I though I would like to work there and I didn't have any problem with noises and I did have a car and I wasn't worried about the road.

A. [sic] Explain fully about keeping company. Be as precise as you can.

A. He said the Director feels you might bring company with you when you work the night shift and I presumed that to mean my boyfriend.

Q. What was the answer you gave to the question?

A. I said I wouldn't do that.

Then Mr. Beck said that a lot of people keep their company with them in their pockets and then he said to Mr. Blair, 'she wouldn't have to worry; she can bring Edgar with her', which is my Doberman.

Q. Mr. Beck knows your brother?

A. Yes.

Q. And he knows your dog?

A. Yes.

Q. And your dog's name is Edgar?

A. Yes.

Q. When talking about company, was he talking about Edgar?

A. No. That was later, a couple sentences later.

Q. Did you ask him what he meant by 'company'?

A. No, I didn't ask him that. I assume, the way it came out, that it meant a person.

Q. He didn't say he was asking you; he said the Director, or Mr. Miller?

The substantial evidence required to support a finding of an administrative agency must be such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *Gallagher v. Civil Service Commission of the City of Philadelphia,* 16 Pa. Commonwealth Ct. 279, 330 A.2d 287 (1974). We have thoroughly reviewed the entire record in the instant matter, and believe that the questions upon which Miss Bonenberger based her claim are insufficient to support the Commission's finding of sex discrimination. Although the assistant plant superintendent asked these questions during the job interview, he recommended complainant for employment. Furthermore, despite the fact that the director of the Water Department may have instructed the superintendent to pursue this line of inquiry, he signed a letter appointing complainant to the position of plant operator. It was the Personnel Department, and not the superintendent or the director, which vetoed the appointment.

As noted above, the court below agreed with our conclusion that the Commission's finding of sex discrimination was not supported by substantial evidence. Having so found, that court overstepped its proper boundaries of review by sustaining the claim, since a finding of unlawful sex discrimination was necessary to support the Commission's adjudication.

For the foregoing reasons, we reverse the decision of the court below.

ORDER

AND Now, the 5th day of April, 1982, the order of the Court of Common Pleas of Allegheny County, dated January 21, 1981, is hereby reversed.

Judge PALLADINO did not participate in the decision in this case.