537 A.2d 957

FR&S, Inc., a Pennsylvania Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

FR&S, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued December 16, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*William F. Fox, Jr., Fox, Differ, Callahan, Ulrich & O'Hara,* for petitioner.

*Winifred M. Prendergast,* Assistant Counsel, for respondent.

*Andrew H. Cline,* Deputy General Counsel, with him, *Timothy D. Searchinger* and *Henry G. Barr,* Deputy General Counsels, for intervenor, Environmental Hearing Board.

OPINION BY JUDGE CRAIG, February 22, 1988:

FR&S, Inc., a landfill owner and operator, has appealed a decision of the Environmental Hearing Board issued June 16, 1987, which affirmed an April 11, 1983 order of the Pennsylvania Department of Environmental Resources (DER) requiring the closure of the FR&S landfill site and denying FR&S' application for a permit under the Solid Waste Management Act.[1]

The threshold question is whether the EHB's decision-making was devoid of due process allegedly by reason of (1) a commingling of prosecutorial and adjudicative roles in the person of the EHB's chairman, (2) bias evidenced by the issuance of the decision only after the departure from the board of the hearing member and one other member so that a majority of the board's membership had changed completely, and (3) the failure of one of the two members voting on the decision to read any of the evidence. This court has ordered these issues to be briefed and argued initially, for a separate decision before the court reaches review of the substantive merits of the EHB order.

Resolution of the due process issues also depends upon reaching specific answers to these questions of implementation:

---

[1] Act of July 7, 1980, P.L. 380, 35 P.S. §6018.101—6018.1003.

1. Where actions affecting the due process of an administrative agency's decision-making occur only after the agency's evidentiary hearings have ended, how and before what tribunal must a complainant establish the evidentiary record necessary for appellate review of the agency's action?

2. If a reviewing court concludes that the agency's decision is irreparably tainted by lack of due process, should the remedy consist of (1) judicial adoption of an alleged proposed hearing officer's decision, or (2) a decision by the court itself on the basis of the record made before the agency, or (3) a remand to the agency for a cured reconsideration of its decision on the basis of the existing record?

### History of the Case

FR&S' Berks County landfill has been the subject of DER enforcement actions, litigation in this court and review by the EHB at least since 1977. In 1978, at No. 2252 C.D. 1978, this court, partly on the basis of a 1977 DER consent order and partly on the basis of new evidence, issued an order barring pollution discharge, governing leachate collection, prescribing a permit application process and mandating inspection surveillance.

After DER issued its April 11, 1983 order denying FR&S' permit application and closing the site, this court, after allowing an initial stay pending further EHB action, granted enforcement of an EHB order of August 1984 by court orders in August and October of 1984, which mandated lowered leachate levels, to be achieved in part by conditional acceptance of waste for absorption purposes. Finally this court, after a contempt hearing, ordered FR&S to close the landfill in

February 1985 for noncompliance with the 1984 EHB and court orders.

As drawn solely from the EHB's record in No. 1667 C.D. 1987, the early chronology of this case has been as follows:

April 11, 1983: DER denied FR&S' permit application and ordered the site closed and corrected. FR&S appealed to the EHB, whose members were then Chairman Dennis Harnish, Member Anthony Mazullo and Member Edward Gerjuoy.

October 11, 1983 to August 15, 1984: As hearing member, Mr. Mazullo, acting alone, presided over evidentiary hearings in the FR&S case, involving 39 days of testimony and resulting in a record of approximately 6000 pages and 200 exhibits.

August 1984 to April 19, 1985: FR&S and DER engaged in the filing of briefs to the EHB, along with replies and supplements to the same, together with motions to strike and answers.

September 1985: Attorney Maxine Woelfling, formerly assistant attorney general assigned as counsel to DER and assistant general counsel assigned to DER, became a member and chairman of the board, filling a vacancy created by the departure of Mr. Harnish in May of 1983.

April 19, 1985 to January 31, 1986: Hearing Member Mazullo, according to the EHB decision, prepared a "draft proposed adjudication" and a "draft opinion" as to the FR&S case. (Supp. R.R. A-94, A-154, A-156, A-157.)

January 31, 1986: Member Mazullo resigned, leaving only Member Gerjuoy and Chairman Woelfling.

July, 1986: Mr. William Roth became a member of the EHB.

The later history emerges also from the docket of No. 3044 C.D. 1986, *without* reference to the hearing held by this court:

September, 1986: FR&S filed a petition for review in the nature of a mandamus action at 3044 C.D. 1986, asking this court to direct the EHB to render a decision; more than a year and four months had passed since the completion of briefing.

January, 1987: Member Gerjuoy resigned from the board, leaving Chairman Woelfling and Member Roth.

March, 1987: This court dismissed the EHB's preliminary objections to FR&S' request that the EHB be required to render a decision.

April 13, 1987: The EHB further contested the suit to require issuance of a decision, by filing an answer.

May 26, 1987: FR&S filed with the EHB a motion for the recusal of Chairman Woelfling, alleging a commingling of roles and bias.

June 9, 1987: FR&S sought to amend its action in this court to obtain assistance in its recusal claim.

June 16, 1987: The EHB, without having granted any hearing on the recusal motion, issued its decision in the FR&S appeal, denying the recusal motion and, on the merits, affirming DER's permit denial and closure order.

The allegations of FR&S' recusal motion to the EHB sought the recusal of Chairman Woelfling because (1) she had been employed by DER in a supervisory capacity as Director of the Bureau of Regulatory Counsel of DER and therefore had knowledge and may have given advice, either directly or through her staff, concerning the FR&S appeal, and (2) she had demonstrated bias by

her actions as chairman, in failing to circulate the draft adjudication of Hearing Member Mazullo while Mr. Gerjuoy remained a member of the EHB, thus depriving that member of his right and duty to vote on the case.

### 1. Post-Hearing Due Process Violations—How and Where to Make a Record

The allegations of due process violations, relating to a time period after the close of evidentiary hearings, are serious ones. Chairman Woelfling, having served as lawyer in various capacities for DER (one of the contesting parties) for eleven years before becoming an adjudicative agency member, has recused herself, according to the EHB's brief, in as many as 79 EHB cases, but she declined to do so here, and FR&S therefore filed its motion with the EHB to disqualify her on that commingling ground and also on the ground that, as chairman, she suppressed the circulation of an adjudication drafted by the hearing member who had heard the witnesses, thus delaying decision of the case for more than a year until the departure from the board of the remaining member whose term had been contemporaneous with the FR&S hearings.

Of course, FR&S could not have pursued either of its Woelfling issues during the hearings because (1) the chairman's alleged commingling arose only when she joined the EHB *after* the close of the hearings, and (2) the bias claim relates to her subsequent action in withholding and circulating proposed decisions.

Not surprisingly, judicial opinions considering the proof of post-hearing due process violations have most often related to a decision-maker's failure to examine the record. Although that particular issue did not appear in this case until later, the post-hearing proof problem is the same with respect to the commingling and bias

which FR&S raised earlier. This court has stated, in an opinion by the late Judge KRAMER:

> We are also cognizant of the problem faced by an appellant . . . who believes himself the victim of misconduct occurring after the closing of a reviewable record. . . . [T]he Commission's Counsel, may indeed have run afoul of constitutional provisions guaranteeing due process of law. . . . We are, however, without any means of determining the extent, if any, of the Counsel's involvement in the decision-making processes of the Commission, except for conjecture, which cannot serve as the basis for an appellate court decision.

*Smith v. State Horse Racing Commission,* 18 Pa. Commonwealth Ct. 1, 7, 333 A.2d 798, 801 (1975). In that case, the most serious problem found by this court was the failure of State Horse Racing Commission members, not present at the hearing, to consider the testimony of eleven witnesses, a failure inferable from the issuance of the adjudication less than twenty-four hours after the testimony had been transcribed. That fact of timing— not to be found in the record, of course—became known to this court only through counsel's admission in the course of oral argument. So egregious was the commission's due process lapse in that respect, this court declined to remand for new proceedings and instead reversed the decision.

Fortunately, the Pennsylvania Supreme Court has responded to the concern expressed by Judge KRAMER in *Smith,* by recognizing that, to avoid an undesirable disruption in the midstream course of a trial, evidentiary exploration of a recusal motion can be deferred until after trial. Thus, in a situation analogous to the present one, where facts pertinent to recusal did not come

into being until after the hearing had ended, a majority of the Supreme Court has stated:

> In such case the complaining party may assign the accusation as a basis for post-trial relief and, if necessary *a record can be developed at that stage* and in that context.

*Municipal Publications, Inc. v. Court of Common Pleas et al.*, 507 Pa. 194, 202, 489 A.2d 1286, 1290 (1985) (emphasis added). A concurring opinion by Mr. Justice ZAPPALA in the same case elaborated as follows:

> [I]f a litigant learns of facts after completion of the trial which bring into issue the trial judge's partiality, then that litigant must preserve that issue in the post-trial motions as he would any other legal issues that may be raised in exceptions or appeals.

507 Pa. at 204, 489 A.2d at 1290.

In *Foley Brothers v. Commonwealth*, 400 Pa. 584, 163 A.2d 80 (1960), concerning the consideration given to evidence by an arbitrator absent from the hearings, the Supreme Court said that "the signatures of all three arbitrators is a guarantee, *absent evidence to the contrary,* that they gave full consideration of the case. . . ." (Emphasis added.) This court reflected the same idea in a school board case:

> *Absent evidence to the contrary,* the recording of the Board members' votes indicates that they gave full consideration to the testimony presented. Foley Bros. v. Commonwealth, supra. And, there being no evidence to the contrary here, it must be presumed the six Boaord [sic] members, who voted on the appellant's dismissal, did consider the evidence presented whether or not all were present at all of the sessions held.

*Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 222, 325 A.2d 490, 494 (1974) (emphasis added).

Thus the courts, although establishing a rebuttable presumption that decision-makers have examined the record, have indicated that an injured party could rebut that presumption by evidence to the contrary.

In accordance with the unavoidable logic of *Municipal Publications*, the EHB should have held a post-trial hearing to develop a record with respect to FR&S' Motion for Recusal, given the unlikelihood that, as an alternative, DER and FR&S would provide stipulations as to (1) Chairman Woelfling's allegedly conflicting functions as a former counsel for DER, and (2) the adjudicative delays which eliminated Member Gerjuoy's opportunity to vote and the alleged suppression of the hearing member's draft adjudication and findings. The EHB held no hearing.

However, FR&S had earlier filed its petition for review in this court at 3044 C.D. 1986, asking a mandate that EHB be required to make some decision.

Unquestionably, mandamus is a proper form of action to compel, not the exercise of discretion by a public body in any specific way, but to compel an administrative body to render a decision which it is required to render. *Larsen v. Pierce Junior College*, 11 Pa. Commonwealth Ct. 271, 314 A.2d 572 (1973). Although section 108 of the Solid Waste Management Act, 35 P.S. §6018.108, clearly imposes an adjudicative duty upon the EHB, and its own regulations provide that "[a]t the conclusion of the proceedings the Board shall issue an adjudication. . . ." 25 Pa. Code §21.118, the EHB inexplicably contested the demand that it render a decision. This court overruled preliminary objections by the EHB. *FR&S, Inc. v. Department of Environmental Resources*, 104 Pa. Commonwealth Ct. 647, 522 A.2d 1190 (1987). The EHB then filed an answer, in the spring of 1987, asking that this court afford FR&S no relief in getting a decision, even though the EHB's own

pleading acknowledged that post-hearing briefs had been completed two years earlier, in April of 1985.

The EHB's resistance to the mandamus action seeking the issuance of a decision led to discovery proceedings thereunder pursuant to the Rules of Civil Procedure. In the course of those discovery proceedings, FR&S apparently learned more about the post-hearing adjudication events. As a consequence, before the issuance of the adjudication, FR&S filed an application to amend its petition for review to add a count adding the recusal claims and seeking an order to command the issuance of Hearing Member Mazullo's draft adjudication as final adjudication of the EHB in the FR&S case.

Treating the amendment primarily as one seeking to have the due process claims resolved, this court allowed it and, following an answer by the EHB, set the matter down for hearing in view of the absence of any evidence on the point upon the EHB's record.

Most significantly, the evidence in that hearing, in September of 1987, established that Member Roth read the chairman's proposed decision, but *did not read any portion of the record of testimony in the FR&S case, nor did he examine any of the exhibits.* He "skimmed through" the briefs of counsel.

The hearing also detailed Chairman Woelfling's roles as counsel for DER and revealed that she finally circulated Hearing Member Mazullo's proposed findings to Member Roth in May of 1987, before she gave Member Roth her own proposed adjudication in June of 1987.

FR&S's original mandamus action (No. 3044 C.D. 1986), as initially pleaded, seeking an order to compel the EHB to render some decision, was well founded upon the original jurisdiction conferred upon the Commonwealth Court by 42 Pa. C. S. §761(a) with respect to actions against the Commonwealth government,

when such actions are not ancillary to any pending appellate case. *Municipal Publications* does not hold the contrary because the Supreme Court there was dealing with the point that the Superior Court, under 42 Pa. C. S. §741, lacks original jurisdiction except with respect to proceedings ancillary to cases actually pending within its appellate jurisdiction.

However, FR&S' appeal of the adjudication to this court, at No. 1667 C.D. 1987, and its amendment of the action at 3044 C.D. 1986, clearly converted that original jurisdiction case to one ancillary to the appellate issue. Accordingly, this court ordered the two actions consolidated under the heading of an appellate proceeding. Any relief sought in this court with respect to EHB's adjudication of the FR&S case must now be in the context of our responsibility as an appellate court reviewing that June 1987 adjudication.

Hindsight tells us that, if the issuance of the adjudication had not come on the heels of the FR&S' filing of its due process claims, this court could well have remanded those claims for hearing by the EHB, so that the pertinent evidence could become part of the record if the case were appealed. *Municipal Publications.*

Of course, a remand for findings on recusal is facilitated in trial court matters because, as in *Municipal Publications,* the Supreme Court can designate a neutral trial judge to preside, choosing from the entire bench of the Commonwealth.

In this case, however, the two remaining EHB members were both personally involved, as it turned out, in the due process issues.

Fortunately, the facts necessary to resolve the due process issues now appear of record. Indeed, with the exception of Member Roth's failure to read the record—which came out in the course of this court's hearing in 3044 C.D. 1986—the chief elements are

known from the EHB's own record on appeal, including its adjudication. Specifically, those facts include these:

1. Hearing Member Mazullo drafted a proposed 'adjudication' and 'opinion' before his departure in January of 1986.

2. Throughout 1986, Chairman Woelfling gave Member Gerjuoy no opportunity to vote on this case.

3. In 1987, Chairman Woelfling, having considered Mr. Mazullo's draft, circulated her proposed decision to Mr. Roth, who had become a member in mid-1986.

## 2. Failure of Decision-Maker to Review Evidence

With respect to the adjudicative duties of members of administrative agencies, two major premises are clear. First, in a multimember agency, where there is authorized machinery to permit fewer than all of the agency members, or a hearing officer appointed for the purpose, to hear and receive the evidence, there is no requirement that all of the decision-makers must sit in upon the evidentiary proceedings. This court has confirmed the point several times. *Caldwell v. Clearfield County Children and Youth Services,* 83 Pa. Commonwealth Ct. 49, 476 A.2d 996 (1984); *Ullo v. State Board of Nurse Examiners,* 41 Pa. Commonwealth Ct. 204, 398 A.2d 764 (1979); *McKarl v. State Board of Nurse Examiners,* 39 Pa. Commonwealth Ct. 628, 396 A.2d 866 (1979).

However, equally well settled is the principle that decision-makers, if not present at the taking of evidence, must give specific consideration to the testimony and exhibits by reading and examining the same. In *Department of Transportation v. Penn. Human Relations Commission,* 510 Pa. 401, 407, 508 A.2d 1187, 1189-90 (1986), the Supreme Court stated:

> We do not agree that the requirement that the full Commission review the recommended findings, conclusions, and order, is satisfied by a vacuous review of the Recommendation. The conclusions and order must be based on the findings of fact. No meaningful review of the findings of fact can be made without reference to the record. In order to properly review findings of fact, the record from which they are derived must be examined in order to determine if the findings are based on substantial evidence. To merely read the findings without examining the record in order to determine if those findings are supported is not to 'review' those findings with the meaning and effect that tribunals regularly perform reviewing functions.

The Supreme Court's remedy was to remand the case. How did the Supreme Court become aware that the commission had not read the record? In that case, no evidentiary hearing was necessary because counsel had stipulated that the commissioners who do not sit at the public hearing do not normally review the entire record, although it is available to them. 510 Pa. at 407, 508 A.2d at 1189.

In *Foley Brothers*, although the Supreme Court said that the power to decide after giving consideration to the evidence does not require that the decision-maker be present to receive every word spoken in evidence, the Court significantly also stated:

> But the important thing is that they who decide must consider all of the evidence, and in the event of a member of the hearing body dying, it should suffice that his successor consider, *by reading from the record what he has not heard,* in order to avoid the practical and expensive difficulty of requiring a full rehearing.

400 Pa. at 591, 163 A.2d at 85 (emphasis added). As noted above, the Supreme Court affirmed the decision of the Board of Claims in that case by concluding that "absent evidence to the contrary," the commissioners had given full consideration to the record.

In the present case, is there evidence to the contrary? There certainly is such evidence here. No one questions the credibility of Member Roth's forthright statements to this court on the point.

As noted above, the forum for receiving evidence of that sort normally would not be the appellate court, particularly where the appellate court does not have this court's unique original jurisdiction, in which the mandamus case was filed. However, a remand to the EHB for testimony reiterating the fact of Mr. Roth's non-examination of the record would be pointless. The fact is before us, and we cannot ignore it.

Despite the Supreme Court's clear mandate that agency decision-makers must read the testimony if they have not actually heard it, and despite the regular references to the possibility of proof on that matter by the courts' use of the phrase, "absent evidence to the contrary," the DER and EHB here appear to contend that judicial eyes must be closed to the facts, citing *United States v. Morgan*, 314 U.S. 409 (1941), for the proposition that adjudicative agency members cannot be examined with respect to the reasoning processes they pursued or with respect to the content of internal documents. However, the point here clearly does not involve any exploration of reasoning processes or prying into internal decision-making aids. All that is involved here is identifying the answer to the Supreme Court's question as to whether there is any evidence to contradict the rebuttable presumption that the decision-maker has studied the evidence.

Therefore, at the least, the adjudication under appeal must be vacated because one of the two voting

members did not examine the prime source of the facts—the testimony and exhibits. *Foley Brothers; Department of Transportation v. Penn. Human Relations Commission.*

### 3. Commingling and Bias Claims

With respect to the allegations of commingling against the EHB chairman, the black letter law has been made clear by decisions of the Supreme Court and this court: Where there is an identity or a meaningful relationship between legal counsel prosecuting a case on behalf of a public party and a member of the decision-making body, or legal adviser to that body, the commingling of functions constitutes a deprivation of due process. There may be an identity between the two roles, as when the attorney for a municipality serves as the legal adviser to the agency deciding a case in which the municipality appears as an adverse party. *Warren v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975). *Schlessinger Appeal,* 404 Pa. 584, 172 A.2d 835 (1961), also condemned the situation in which the prosecutors serve as the actual decision-makers. Of like tenor is *Gardner v. Repasky,* 434 Pa. 126, 252 A.2d 704 (1969), in which a complaining fire board member also voted as a member of the Civil Service Commission.

Where there is not an identity of persons in the two conflicting roles, the test is whether the relationship is one in which influence over the decision-maker's vote is likely. In *Goldberg v. State Board of Pharmacy,* 49 Pa. Commonwealth Ct. 123, 410 A.2d 413 (1980), we disapproved of the situation in which the legal adviser for the board was the supervisor of the prosecuting attorney, and therefore was likely to be inclined toward the success of the task given to his subordinate.

*Donan v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971), in-

validated a decision where the municipal solicitor who investigated the matter, made the charge, also advised the Civil Service Commission and presided over its hearing. The result was similar in *Department of Insurance v. American Bankers Insurance Co. of Florida,* 26 Pa. Commonwealth Ct. 189, 363 A.2d 874 (1976), where the prosecuting attorney also was a direct subordinate of the hearing examiner. In *Pittsburgh Board of Education v. MJN by NJN,* 105 Pa. Commonwealth Ct. 397, 524 A.2d 1385 (1987), we remanded for a new hearing because the prosecuting and advising attorneys were from the same legal office of the. Pittsburgh School Board.

On the other hand, the fact that the prosecuting assistant city solicitor and a voting member of the pension board were both from the same legal office of the city did not constitute commingling in itself, in *Board of Pensions and Retirement v. Schwartz,* 97 Pa. Commonwealth Ct. 539, 510 A.2d 835 (1986), and in *Horsley v. Philadelphia Board of Pensions and Retirement,* 95 Pa. Commonwealth Ct. 558, 510 A.2d 841 (1986). However, when the same city solicitor served as counsel for the pension board before a three-member hearing panel and later cast a deciding vote at a full board meeting, we concluded that improper commingling. was present. *Philadelphia Board of Pensions & Retirement v. Amanto,* 97 Pa. Commonwealth Ct. 550, 510 A.2d 846 (1986).

In the present case, there is no dispute as to the point that Chairman Woelfling served, first as an assistant attorney general and then under the General Counsel's office, as head of the group of lawyers giving regulatory advice to DER, a group which functioned separately from the Bureau of Litigation containing the lawyers who actually prosecuted the cases.

However, the evidence presented in this court nevertheless did not establish that Chairman Woelfling

had ever been officially involved in prosecuting, or advising upon, enforcement actions against FR&S in particular.

On the other hand, with respect to the claim of bias against Chairman Woelfling, apart from any matter of commingled roles, EHB's own record, as distinct from any testimony taken in this court, raises a serious question of bias in that, although the EHB adjudication itself acknowledges the existence of a draft adjudication by the hearing officer and claims that draft as a basis for its own findings, the decision-making process under the control of Chairman Woelfling was protracted, not only beyond the tenure of the hearing officer, but also beyond the tenure of the other experienced member of the board, Mr. Gerjuoy, despite the fact that Mr. Gerjuoy did not depart for a year after the draft adjudication came into being. If the hearing officer's draft adjudication was available in January of 1986 and was sufficient then to provide a basis for the adjudication, as the adjudication itself claimed, why did the year 1986 go by without any opportunity for Member Gerjuoy to vote upon the adjudication?

As a consequence—perhaps an unwitting consequence—of that delay, the issuance of the adjudication, prodded by the mandamus action which had to be filed in this court, finally came about in mid-1987, without meaningful participation by Member Roth, and without any vote on it by Member Gerjuoy, who had remained available to vote for a year after the departure of hearing Member Mazullo.

The EHB adjudication compares the present case to *Department of Environmental Services v. Lawrence Coal Co.*, 1986 EHB 519, noting that recusal issues were involved there. The comparison is unfortunate because this court, in an appeal of that case, has ordered a

remand to the EHB for new hearings. *Lawrence Coal Co. v. Department of Environmental Services,* No. 3062 C.D. 1986 (filed January 25, 1988).

To preserve the integrity of the administrative decision-making process, the essential principle is that the appearance of bias, as well as bias itself, must be avoided. *Gardner.* Chairman Woelfling, as such, necessarily had a substantial degree of control over the matter of which members had an opportunity to vote on this case. Even in the absence of a technical commingling of roles, as a former attorney for one of the litigant parties, the chairman should have maximized the opportunity for board member participation. Instead, in the end, her vote was the sole meaningful one. Despite the undoubtedly heavy workload of the EHB, the FR&S adjudication, stemming from hearings in 1984, deserved full board participation when such full participation was possible. Without it, regardless of the best of intentions, which we can presume the chairman has possessed, an appearance of bias has so tarnished these proceedings that the adjudication cannot be upheld.

### 4. Conclusion and Remedy

For the foregoing reasons, the adjudication and order of the EHB dated June 16, 1987 must be vacated.

FR&S contends that this court should reverse and either (1) direct the EHB to issue the adjudication of Hearing Officer Mazullo as the board's decision, or (2) ourselves decide the merits on the basis of the EHB's record.

There is no authority for either of those remedies. The *Morgan* principle would soundly bar an appellate court from sorting through the unfiled papers of a lower tribunal to find some likely-looking document; we cannot breathe life in the Mazullo draft, sight unseen. Nor

can this court displace the expertise vested by statute in the EHB with respect to environmental problems.

Therefore, the only course open is to remand to the EHB for reconsideration and a new adjudication and order based upon the evidence received by Hearing Member Mazullo during the 1984 hearings and with reference to the briefs and other papers duly filed by FR&S and DER during 1984 and 1985. For the same reasons, this court must direct that reconsideration shall be carried out without participation by Chairman Woelfling or Member Roth. The chairman must be regarded as disqualified, and Member Roth must be excluded because further decision-making participation would place him in an obviously impossible position, whether his new vote would match or contradict his previous vote.

Reconsideration and a new decision must therefore be the responsibility of the new third member of the EHB now in office.

### ORDER

Now, February 22, 1988, the adjudication and order of the Environmental Hearing Board at EHB Docket No. 83-093-M, issued June 16, 1987, is hereby vacated, and the matter is remanded to the Environmental Hearing Board for reconsideration and a new decision, to be issued within 90 days of the date of this order, on the basis of the 1984 record made before that board and the 1984 and 1985 briefs and other papers filed by the parties with that board. The Chairman and Member William Roth shall not participate in the reconsideration and new decision.

Jurisdiction retained.