548 A.2d 1345

Mabel Clites t/d/b/a Clites Guest Home, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

*Karen L. Steele, Leopold, Eberhardt, Goldstein, Heslop & Steele,* for petitioner.

*Myra Werrin Sacks,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, October 21, 1988:

Before us is a petition for review by Mabel Clites t/d/b/a Clites Guest Home (Appellant) from a decision of the Office of Hearings and Appeals (OHA), Department of Public Welfare (DPW) sustaining DPW's refusal to renew Appellant's personal care home license. We affirm.

Appellant as a provider of personal care home services is subject to certain licensure requirements which fall under DPW regulation pursuant to Section 1026 of the Public Welfare Code (Act), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §1026 and 55 Pa. Code §20.71.

By letter dated November 25, 1986, Appellant was notified by Leslie Best, an inspector for DPW's Person-

al Care Home Program that on December 17, 1986, a licensing inspection of Appellant's facility would be conducted. On December 19, 1986, a letter was sent to Appellant setting forth certain violations of DPW regulations found to exist by Inspector Best at the time of the inspection:

(1) Physician certificates were not completed for two residents—H.C. and M.M.

(2) V.M., a resident, was not independently or semi-mobile.

(3) No written provider agreement was found for H.C.

(4) A resident record for H.B., a recently deceased resident, was not available.

(5) Social security numbers were missing from the records of J.S., L.B., V.M. and H.C.; physician phone numbers were missing from the records of J.S. and L.B.; and medication lists were in need of updating regarding the records of L.B., V.M. and M.H.

(6) Financial assistance was being provided to M.H. but no individual record of financial transactions was being maintained and deposits and expenditures were not documented.

Appellant was directed by Inspector Best in the December 19, 1986 letter to submit a plan of corrective action to DPW if she wished to have her license renewed. Appellant did not respond to this request and on January 27, 1987 DPW issued another request for a plan of correction. Again, no plan was submitted. On February 12, 1987, DPW issued a third request for a correction plan. Finally, on February 17, 1987, Appellant submitted a plan of correction. On February 18, 1987 Inspector Best sent a letter to Appellant advising her that her plan of correction was unacceptable and that she could submit another plan of corrective action.

On March 9, 1987 Appellant was advised that her corrective action plan was overdue and that she had five working days within which to submit a plan. On March 26, 1987, Appellant received a notice from DPW informing her that her license was not being renewed because of record violations and her failure to submit an acceptable plan of correction. On April 27, 1987, Appellant submitted an appeal to the OHA.

A hearing was held before a hearing officer who resolved conflicts in testimony in favor of DPW and concluded that (1) substantial evidence existed that the records reviewed by Inspector Best were lacking required information which could affect the quality, care and safety of the residents; (2) that substantial evidence existed showing that certain records presented at the hearing had been altered by Appellant in an attempt by Appellant to show that the records were being maintained on December 16, 1986[1] as required by DPW regulations; (3) Appellant was in violation of DPW regulations because M.H., a resident, was assisted in her financial affairs by Appellant and no record of transactions was being maintained.[2] It was the hearing officer's recommendation that Appellant's license not be renewed because not only did she fail to comply with DPW regulations at the time of the inspection, but she also failed to submit a plan of correction. The OHA adopted the hearing officer's recommendation in its entirety. Appellant petitioned this Court for review.

---

[1] The hearing officer refers to December 16 as the date of the inspection; however, our review of the record reveals that the inspection actually took place on December 17, 1986, and we will refer to the date of inspection as such.

[2] The hearing officer also concluded that DPW failed to sustain its burden that V.M., a resident, was not independently or semi-mobile.

The issues presented for our review are: (1) whether the failure to submit an acceptable plan of correction alone supports a decision of non-renewal of a license; (2) whether DPW presented substantial evidence that the personal care records of Appellant were altered subsequent to the inspection; (3) whether DPW presented substantial evidence that resident M.M. was actually a resident; and therefore, a physician certificate was required certifying appropriateness of care; (4) whether DPW presented substantial evidence that Appellant did not make certain records available regarding H.B., a deceased resident; and (5) whether DPW presented substantial evidence that Appellant was in violation of DPW regulations because no record of financial transactions was being maintained with respect to M.H.

We will address each issue *seriatim* keeping in mind that our scope of review herein is confined to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law and whether a violation of constitutional rights has occurred. *Lancaster General Hospital v. Department of Public Welfare*, 112 Pa. Commonwealth Ct. 605, 535 A.2d 1238 (1988). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *City of Pittsburgh v. Commission on Human Relations of the City of Pittsburgh*, 65 Pa. Commonwealth Ct. 610, 444 A.2d 182 (1982).

Appellant submits that the failure to present an acceptable plan of correction alone does not support a decision of license non-renewal because proof of the alleged non-compliance items must also be presented by DPW. We disagree. In 55 Pa. Code §20.71 it is provided that DPW "may deny, refuse to renew, or revoke a certificate of compliance for any of the following: . . . (3) [f]ailure to submit an acceptable plan to correct non-

compliance items". Section 1026 of the Act also authorizes DPW to refuse to issue or revoke a license for a violation of or non-compliance with the Act or regulations pursuant thereto.

In *Pine Haven Residential Care Home v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 1, 512 A.2d 59 (1986), DPW, after conducting a routinely scheduled inspection of Pine Haven Residential Care Home, found a number of violations of personal care boarding home regulations. Pine Haven was requested to present DPW with a plan of correction and was provided with several opportunities to do so. When Pine Haven failed to submit a plan of correction, DPW notified Pine Haven on June 25, 1984 that its license was revoked. On July 19, 1984, Pine Haven submitted a plan of correction and filed its appeal of DPW's license revocation. On appeal, this Court noted that Pine Haven's failure to submit a plan of correction until July 19, 1984 was sufficient in itself for revocation. Likewise, when Appellant failed to submit a plan of corrective action after being notified on February 18, 1987 that her submitted plan was unacceptable was sufficient to justify revocation of her license.

Appellant's second contention is that DPW did not present substantial evidence proving that the personal care records of Appellant were altered subsequent to the December 17, 1986 inspection. Thus, Appellant's argument here is reduced to one of credibility—the testimony of Inspector Best that certain items did not exist in the record at the time of the inspection and the contrary testimony of Appellant as well as Appellant's attempt to produce records at the hearing containing the missing information.[3] It has been firmly established that

---

[3] We note that there is also testimony in the record that the alleged missing items were written in a different color of ink than the remaining entries. Because the record before us contains pho-

credibility and the weight to be accorded evidence are a determination solely within the discretion of the fact-finder. *Colonial Gardens Nursing Home v. Department of Health*, 34 Pa. Commonwealth Ct. 131, 382 A.2d 1273 (1978). Accordingly, because the testimony of Inspector Best constitutes substantial evidence that the records at the time of the inspection were missing important information, *i.e.* social security numbers, physician phone numbers, medication lists, a provider agreement and physician certificates, we will affirm.

As to the third issue raised by Appellant, Inspector Best testified that upon her examination of the records of M.M. she discovered that a physician certificate was missing from the record as required by 55 Pa. Code §2620.21(a).[4] Appellant argues that M.M. was not a resident of the home; therefore, no physician certificate was required. It is Appellant's position that M.M. was a long-time family friend who stayed with her free of charge on two separate occasions, each stay lasting about two weeks. According to Appellant's testimony at the hearing, Inspector Best could not have reviewed M.M.'s file on December 17, 1986 because she is not a resident; and therefore, no file ever existed on M.M.

_____

tocopies of these records, we are unable to examine the originals to determine whether a different color of ink was in fact used. However, we believe there is sufficient testimony on behalf of both DPW and Appellant in the record to support a finding that the missing items now appear in the records and are written in a different color of ink. Also, the record discloses that the original records were presented at the hearing for review and no objection was made to the admission of the photocopies.

[4] It is provided in 55 Pa. Code §2620.21(a) that "No person in need of personal care services shall be admitted to a personal care home until he has a certificate from a licensed physician stating that he does not require the services of an intermediate care or a skilled nursing facility or hospital." In 55 Pa. Code §2620.21(b), it states that the physician certificate must be updated annually.

The hearing officer resolved this credibility determination in favor of DPW and because this decision is supported by substantial evidence, we will affirm.

The fourth issue raised by Appellant again involves one of credibility. Inspector Best testified that resident records must be maintained for a minimum of three years after a resident has left a home,[5] and that Appellant failed to make the records of H.B., a recently deceased resident, available to Inspector Best after being requested to do so. Appellant testified that Inspector Best never requested H.B.'s records. In resolving this conflict in testimony in favor of Inspector Best, the hearing officer queried that a reasonable person if cited for such a deficiency would have contacted DPW to obtain clarification and assistance, which Appellant did not do.[6] Thus, because the hearing officer's determination is supported by substantial evidence—the testimony of Inspector Best—we will not disturb it.

Lastly, Appellant argues that she is not in violation of 55 Pa. Code §§2620.33(e) and (e)(1)[7] because there

_____

[5] *See* 55 Pa. Code §2620.22(a) which requires a provider to maintain individual resident records which will be made available to the resident, to DPW, or its authorized agent upon request and 55 Pa. Code §2620.22(c) which requires these records to be maintained for a minimum of three years after the resident has left the home.

[6] We observe from an examination of the record that Appellant responded to the statement of deficiency by Inspector Best in her plan of correction by indicating that H.B. was deceased as of November 18, 1987 [sic] (we believe the correct date is 1986) and was not a resident of the home at the time of the inspection.

[7] 55 Pa. Code §2620.33 relevantly states:

(e) *Assistance with financial management.* If assistance with financial management is provided, the provider shall maintain a separate current individual record of financial transactions for the resident and shall give the resident an accounting of transactions made on the resident's behalf at least annually . . .

were no funds to manage. More specifically, M.H. would endorse her sole monthly income which consisted of a social security check in the amount of $351.00 over to Appellant. With this money, Appellant would provide M.H. with room and board, medications and any other personal needs. Appellant testified that pursuant to the provider agreement between Appellant and M.H. the monthly charge for room and board was $480.00 and because M.H.'s income was less than her expenses, Appellant was not required to maintain financial records. We are unpersuaded by Appellant's argument. The regulations at 55 Pa. Code §2620.33(e) require a provider who assists a resident with financial management to maintain a separate record of financial transactions and to document deposits and expenditures with written receipts. Therefore, Appellant was required to maintain such records and it was proper for DPW to find her deficient for failing to do so.

The decision of the OHA is hereby affirmed.

### ORDER

AND NOW, this 21st day of October, 1988, the decision of the Office of Hearings and Appeals, Department of Public Welfare in the above-captioned matter is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

(1) Deposits and expenditures must be documented with written receipts. Disbursement of funds to the resident shall be documented and the resident shall acknowledge the receipt of funds in writing. Accounts will clearly reflect deposits, receipt of funds, disbursal of funds, and the current balance.