**Augustus RIEDEL, Appellant,**

**v.**

**The HUMAN RELATIONS COMMIS-
SION OF the CITY OF READ-
ING and Millicent Ferrer.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2000.

Decided July 17, 2000.

Kathleen D. Dautrich, Reading, for appellant.

Louis M. Shucker, Reading, for appellees.

Before SMITH, J., PELLEGRINI, J., and RODGERS, Senior Judge.

SMITH, Judge.

This case is before the Court on remand by order of the Pennsylvania Supreme Court. The Supreme Court reversed this Court's decision to reverse the order of the Berks County Court of Common Pleas affirming an order of the Human Relations Commission of the City of Reading (HRC). The HRC held that Appellant Augustus Riedel engaged in a "discriminatory housing practice" in violation of Section 155.07(*l*) of the City of Reading's Human Relations Ordinance (Ordinance) by making repeated obscene, hostile and derogatory remarks to Millicent Ferrer and her two children. The issues presented are whether Riedel's conduct violated Section 155.07(*l*) of the Ordinance; whether the HRC's determination that Riedel's conduct was threatening or coercive toward Ferrer was supported by substantial evidence; whether Riedel's constitutional rights were violated when only two of the four HRC commissioners who signed the decision were present at the hearing; and whether the $500 fine imposed by the HRC was punitive and unjustified.

## I

Ferrer, a Puerto Rican, resided with her two children aged 13 and 9 in a second-floor apartment on North Tenth Street in the City of Reading from September 1992 to November 1994. During that time Riedel, a Caucasian, lived in an apartment immediately below Ferrer's apartment. In December 1993 the relationship between Riedel and Ferrer became unfriendly, and on March 9, 1994 Ferrer filed a complaint with the HRC alleging that Riedel had harassed her and her children by making derogatory, obscene and hostile remarks to them. After an investigation, the HRC concluded that probable cause existed to support Ferrer's allegations.

On January 23, 1996, two of the five HRC commissioners conducted a public hearing on the complaint. Ferrer testified that Riedel made repeated obscene and hostile remarks to her and her children, that he would yell these remarks from his apartment or from the hallway outside of his apartment, that he would pound on the walls and ceiling of his apartment and that she and her children vacated their apartment in fear of Riedel. Ferrer stated that Riedel made denigrating references to her Puerto Rican origin and told her that she did not belong in this country and that she should stop receiving public assistance. Joseph Santana, a friend of Ferrer's, gave the following testimony: "I personally heard Mr. Reidel (sic) address Mrs. Ferrer as an F-ing Puerto Rican whore on many occasions, you need to get your f___ing ass out of here. This is America. This is not a place for you. Go back to where you came from." N.T., 1/23/96, at 45. Santana heard Riedel make other derogatory and offensive statements to Ferrer's son.

Riedel testified that he lived with and cared for his elderly father and that his remarks to Ferrer and her children were in response to the excessive noise which came from Ferrer's apartment and which aggravated his father's condition. Riedel stated that Ferrer's son made obscene remarks to him, called him among other things a "f___ing whitey" and told him that he could perform certain obscene acts. N.T., 1/23/96, at 71–72. Riedel also stated that he never used racial slurs and that he was not biased against Latinos or people on public assistance.

The HRC decision, signed by four of the five commissioners, found that Riedel made derogatory, obscene and hostile remarks to Ferrer and her children; that the remarks were of a threatening nature and intended to force them to move from the apartment; that the Ferrer family was intimidated by the remarks and, on more than one occasion, temporarily vacated the apartment; and that the harassment continued until the Ferrer family moved away in November 1994. The HRC concluded that Riedel's conduct interfered with Ferrer's right to the quiet enjoyment of her apartment and that this conduct violated Section 155.07(1)(*l*) of the Ordinance.[1] The HRC ordered Riedel to pay a penalty of $500 to the HRC and to write a letter of apology to Ferrer.

Riedel appealed to the court of common pleas, which affirmed. This Court reversed after it sua sponte addressed whether the HRC had the authority to enforce Section 155.07(1)(*l*) the Ordinance when no corresponding provision proscribing similar conduct exists in the Pennsyl-

---

1. Section 155.07(*l*) makes it unlawful: "For any person to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by this Ordinance." Section 155.03(f) of the Ordinance defines a "discriminatory housing practice" as: "[A]n act that is either unlawful under the provisions of this Ordinance or is unlawful under section 804, 805, 806, or 818 of the Federal Fair Housing Act [42 U.S.C. §§ 3604, 3605, 3606 or 3617] or section 955 or 955(h) of the Pennsylvania Human Relations Act [Section 5 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955]."

vania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951—963. *See Riedel v. Human Relations Commission of City of Reading,* 703 A.2d 1072 (Pa.Cmwlth.1997) (*Riedel I* ). The Court held that local commissions, such as the HRC, only have the authority to proscribe discriminatory conduct that is unlawful under the PHRA and that the PHRA does not proscribe interference with a person's quiet enjoyment of his or her apartment even if accompanied by racial epithets.

The HRC appealed to the Pennsylvania Supreme Court, which reversed. *See Riedel v. Human Relations Commission of City of Reading,* 559 Pa. 34, 739 A.2d 121 (1999). The Supreme Court held that, although a court may at any time raise and address the issue of an agency's jurisdiction, the issue addressed sua sponte by this Court did not involve the HRC's jurisdiction but rather involved its authority to enforce Section 155.07(1)(*l*) of the Ordinance. The Supreme Court explained the differences between an agency's jurisdiction and authority to act and then concluded that the HRC had jurisdiction over the subject matter of the case, viz, whether an unlawful housing practice had been committed. The Supreme Court determined that this Court improperly raised and addressed whether the HRC had the authority to proscribe Riedel's conduct because it was not also proscribed by the PHRA. Because Riedel did not raise the issue before the trial court, it was deemed waived. The case was accordingly remanded to this Court to consider the issues that Riedel properly preserved for review.

II

This Court's review of the HRC's decision is limited to determining whether it committed a constitutional violation or an error of law or whether its relevant findings of fact were supported by substantial evidence. *City of Pittsburgh v. Commission on Human Relations of City of Pittsburgh,* 65 Pa.Cmwlth. 610, 444 A.2d 182 (1982). Riedel first argues that the HRC erred in finding that he committed a violation of Section 155.07(1)(*l*) of the Ordinance because he took no action that constituted a discriminatory housing practice. Specifically, Riedel argues that the right to quiet enjoyment of one's apartment is not enumerated in the Ordinance and therefore cannot be protected and, moreover, that this right is held only by a tenant against a landlord pursuant to a lease and not held between two tenants who are not contractually bound.

Neither the Ordinance nor the PHRA specifically addresses the right to reside in housing free from discriminatory conduct of others. *Riedel I.* Rather, the Ordinance and the PHRA proscribe discriminatory conduct during the search, application, financing, sale or rental of housing. Similarly, the Federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601–3631, prohibits discrimination in the context of the listing, financing, sale or rental of housing. Unlike the PHRA, Section 3617 of the FHA, 42 U.S.C. § 3617,[2] is virtually identical to Section 155.07(1)(*l*) of the Ordinance and has been interpreted by federal courts as prohibiting discrimination against persons who have exercised their fair housing rights. *See, e.g., Congdon v. Strine,* 854 F.Supp. 355 (E.D.Pa.1994); *Ohana v. 180 Prospect Place Realty Corp.,* 996 F.Supp. 238 (E.D.N.Y.1998); *Stackhouse v. DeSitter,* 620 F.Supp. 208 (N.D.Ill.1985).

The HRC argues that, because no Pennsylvania cases exist discussing Section

---

**2.** 42 U.S.C. § 3617 provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoy-

ment of, any right granted or protected by section 3603 [effective dates of certain prohibitions], 3604 [discrimination in the sale or rental of housing and other prohibited practices], 3605 [discrimination in residential real estate-related transactions], or 3606 [discrimination in the provision of brokerage services] of this title.

155.07(1)(*l*) of the Ordinance and because that section and Section 3617 of the FHA are substantially similar, the Court should adopt the federal courts' interpretation of Section 3617 as the proper interpretation of Section 155.07(1)(*l*).[3] The HRC cites *Stackhouse* to support its contention that Section 155.07(1)(*l*) prohibits the conduct perpetrated by Riedel. In *Stackhouse* a white resident firebombed an automobile owned by a black resident with the intention of driving him from a previously all-white neighborhood. The court noted that the sections enumerated in Section 3617 did not specifically proscribe the conduct at issue, but it concluded nonetheless that the "broad and inclusive language" of the FHA and of Section 3617 protect against coercive acts taken against those who have already exercised their fair housing rights.

The purpose behind the enactment of Section 155.07(1)(*l*) was to outlaw not only discriminatory practices related to the search, financing, sale or rental of housing but also to outlaw discriminatory conduct designed to interfere with the quiet enjoyment of one's residence. The HRC found that Riedel made repeated obscene and hostile remarks to Ferrer and her children, that the remarks included derogatory references to their Puerto Rican origin and that the remarks were threatening in nature and forced Ferrer and her family to vacate their apartment on more than one occasion. Under these circumstances, the HRC did not err in concluding that Riedel's conduct constituted a violation of Section 155.07(1)(*l*).

Riedel next argues that the HRC's finding that his conduct was threatening or coercive was not supported by substantial evidence. Riedel maintains that there was no testimony that he made threatening gestures, blocked a doorway or brandished an object in a threatening way. He argues as well that the Ordinance does not define "threatening" and "coercive" and that his conduct would not constitute "harassment" under Section 2709 of the Crimes Code, 18 Pa.C.S. § 2709, and only rose to the level of a "minor annoyance." Although the Ordinance does not define the terms "threatening" or "coercive," the Court concludes that the HRC did not misapply those terms as they are commonly construed. *See* Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). Moreover, federal courts have held that acts of coercion or intimidation need not be violent or threaten violence to constitute a violation of Section 3617 of the FHA. *See, e.g., Fowler v. Borough of Westville*, 97 F.Supp.2d 602 (D.N.J.2000); *People Helpers Foundation, Inc. v. City of Richmond*, 781 F.Supp. 1132 (E.D.Va. 1992).

Riedel contends that his constitutional rights were violated because two of the HRC commissioners who signed the decision were not present at the hearing. Riedel argues that Section 155.12(1)(*l*) of the Ordinance requires that all of the commissioners who decide a case must review the transcript and discuss the case before signing a decision and that this procedure was not followed.[4] It is well settled that when authorized machinery exists to permit fewer than all members of an administrative agency to hear and receive evidence all of the decision-makers are not required to participate in the evidentiary

3. When there is little or no Pennsylvania case law discussing a statute, a court may look to federal case law for guidance. *See, e.g., Chmill v. City of Pittsburgh*, 488 Pa. 470, 412 A.2d 860 (1980); *Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 626 A.2d 595 (1993).

4. Section 155.12(1)(*l*) of the Ordinance provides: "Subsequent to the public hearing, a transcription of the testimony shall be ordered and, when completed, distributed to the Commissioners for review. Upon review, the Commissioners shall meet to discuss and decide the case. A vote by a majority of the Commissioners shall be necessary to find that the respondent has engaged in an unlawful practice." Also, Section 155.12(i) provides: "Where a public hearing is ordered, the Commission shall designate one or more members or a hearing examiner to conduct such a hearing."

proceedings. *FR & S, Inc. v. Department of Environmental Resources*, 113 Pa. Cmwlth. 576, 537 A.2d 957 (1988). Absent evidence to the contrary, a reviewing court may conclude that agency members gave full consideration to the record prior to issuing a decision. *Foley Brothers, Inc. v. Department of Highways*, 400 Pa. 584, 163 A.2d 80 (1960). Because Riedel failed to prove that two of the commissioners did not give full consideration to the record, the Court rejects Riedel's constitutional claim.

Lastly, Riedel argues that the HRC decision was punitive and unjustified and that the $500 fine was excessive because his only source of income was from public assistance. The primary purpose of a fine or penalty is to punish violators and to deter future or continued violations. *Commonwealth v. Church*, 513 Pa. 534, 522 A.2d 30 (1987). Section 155.14 of the Ordinance provides that the HRC may impose a penalty of up to $10,000 if a person is found to have committed an unlawful discriminatory housing practice. The HRC imposed a fine well below the amount authorized by Section 155.14, and considering Riedel's conduct a higher penalty could have been justified under the circumstances. The Court therefore concludes that the fine was neither excessive nor unreasonable. The Court does not address whether the HRC had the authority to order Riedel to write a letter of apology to Ferrer. Riedel did not raise this issue on appeal. For the foregoing reasons, the order of the court of common pleas is affirmed.

### O R D E R

AND NOW, this 17th day of July, 2000, the order of the Berks County Court of Common Pleas is affirmed.

Judge PELLEGRINI concurs in the result only.