524 A.2d 1385

Pittsburgh Board of Public Education, Appellant *v.* MJN, by his father and natural guardian, NJN, Appellee.

398

Argued October 10, 1986, before Judges CRAIG and BARRY (P), and Senior Judge BLATT, sitting as a panel of three.

*Robert J. Stefanko,* for appellant.

*Maurice A. Nernberg, Jr., Nernberg & Laffey,* for appellee.

OPINION BY JUDGE BARRY, April 22, 1987:

The Pittsburgh Board of Public Education (Board) appeals from an order of the Allegheny County Court of Common Pleas granting the motion for summary judgment filed by MJN, appellee, and sustaining MJN's appeal under the Local Agency Law, 2 Pa. C. S. §754, from a Board decision to suspend him from high school.

MJN, while a high school freshman, was suspended from high school for allegedly gaining unauthorized access after school hours into the school district's main computer from his home computer. He was subsequently charged with violating the Pittsburgh Public School Discipline Code. A suspension hearing was held before the Board on February 28, 1985, and the Board recommended that MJN be suspended for thirty days for violations of Rules Two and Eight of the School Discipline Code.[1] MJN immediately filed a complaint in

---

[1] RULE 2. DAMAGE, DESTRUCTION OR THEFT OF SCHOOL PROPERTY

A student shall not intentionally cause or attempt to cause substantial damage to school property, or steal or attempt to steal school property of substantial value. Repeated damage or theft involving school property of small value also shall be considered an act of serious student misconduct.

RULE 8. REPEATED SCHOOL VIOLATIONS

A student shall not repeatedly fail to comply with directions of Principals, teachers, or other authorized school personnel during any period of time when he/she is properly under the authority of school personnel.

the United States District Court for the Western District of Pennsylvania. The Honorable PAUL A. SIMMONS enjoined the Board from implementing the suspension, directed that MJN be reinstated as an attending student and ordered a rehearing. Specifically, Judge SIMMONS ruled that the Board denied MJN a fair hearing in violation of his due process rights. Pursuant to his order, a conference with MJN's parents was held on March 7, 1985 and a rehearing was held on March 13, 1985. On March 27, 1985, the Board again suspended MJN for thirty days.

On April 3, 1985, MJN appealed to the Court of Common Pleas of Allegheny County under Section 752 of the Local Agency Law. This appeal was consolidated with his earlier statutory appeal of the February 28, 1985 decision. On May 13, 1985, the trial court granted MJN's motion for allowance of discovery and a so-called motion for summary disposition which, in effect, requested leave to file a motion for summary judgment. The Board then moved for a protective order under Pa. R.C.P. 4012 which the trial court denied. On November 15, 1985, MJN filed a motion for summary judgment. The Board responded with a counter-motion to dismiss petitioner's motion for summary judgment. In that counter-motion the Board specifically requested that the trial court rescind its order of May 13, 1985 granting MJN the right to discovery and the right to move for summary judgment at the close of discovery. On May 1, 1986, the trial court, in an able opinion by the Honorable RICHARD ZELEZNIK, denied the Board's request to rescind its order permitting discovery and summary judgment reasoning that, if there are no material issues of fact remaining of record and a party is entitled to relief as a matter of law, the court should be free to grant summary relief whether it is an appeal from an administrative agency or some other proceeding. The

trial court ruled that discovery was permissible "in furtherance of our duty to take additional evidence, having concluded that the record below was incomplete, pursuant to the Local Agency Law. 2 Pa. C.S.A. §754." The trial court then moved to the merits of MJN's motion for summary judgment. Judge ZELEZNIK, specifically addressing the allegation in the motion for summary judgment that the Board commingled prosecutorial and advisory functions at the March 13, 1985 rehearing, denying MJN his constitutional right to a fair hearing and a fair tribunal, ruled that impermissible commingling of functions had occurred which resulted in prejudice to MJN. The trial court pointed to the overlapping functions and the close working relationship of the Board's prosecuting attorney and the susceptibility that the prosecuting attorney would become involved in the ultimate decision.

Rather than remand the matter back to the Board, the trial court, reversed the Board, granted the motion for summary judgment and ordered that MJN be reinstated to his pre-suspension status.

On appeal to this Court, the Board argues that the trial court's ruling on the commingling issue was incorrect because a high school student is not entitled to the same degree of due process in a suspension hearing as an adult when that adult's employment or livelihood is threatened. In addition, the Board argues that the trial court improperly granted discovery rights because Local Agency Law requires that, in cases where the record below is incomplete, the trial court's only alternative is to remand the matter back to the administrative tribunal for completion of the record. Along those same lines, the Board contends that the Pa. Rules of Civil Procedure do not apply to appeals under the Local Agency Law and that the trial court erred in granting permission to MJN to file a motion for summary judg-

ment and then by granting that motion. Finally, the Board argues that the trial court erred by reinstating MJN rather than remanding the matter back to the Board for corrective action.

We must first address the Board's procedural arguments for if we rule that the procedural issues, namely, the trial court's grant of discovery and summary judgment, were wrongly decided and the trial court was precluded from addressing the substance of MJN's appeal from the Board's decision, our decision on that issue alone would be dispositive. Thus, we first address the Board's argument regarding discovery and summary judgment. Section 754 of the Local Agency Law reads:

§754. Disposition of appeal

(a) Incomplete record.—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by sub-

stantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa. C. S. §706 (relating to disposition of appeals).

1978, April 28, P.L. 202, No. 53, §5, effective June 27, 1978.

The Board argues that the only alternative here would be for the trial court to remand for the purpose of completing the record. We disagree. Section 754(a) of the Local Agency Law permits the trial court to remand or hear the appeal *de novo* if the record is incomplete. Here, the issue of bias was raised by MJN before the Board but never addressed by the Board and was not a matter of record. In *Lower Providence Twp. et al. v. Nagle*, 79 Pa. Commonwealth Ct. 322, 469 A.2d 338 (1984), we held that the trial court improperly conducted an appeal *de novo* when it addressed the issue of bias when that issue was not raised before the township board of supervisors. As noted, this is not the case before us because MJN objected at the early stages of the Board's hearings to the functions of the conflicting roles of the prosecuting and advising attorneys. The trial court, however, was correct in determining that the record was incomplete and did not act improperly by conducting a *de novo* review. The fact that the court accepted much of the record below and directed, through discovery, that further evidence be gathered in the form of depositions of the Board's counsel and tribunal members, did not act to diminish the proper *de novo* character of the hearing. A court, acting *de novo,* has full fact finding functions and it is implicit in Section 754(a) that a court acting *de novo* is not restricted in its fact finding function. Pa. R.C.P. No. 4001 limits the scope of discovery to "any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules. . . ." Discovery itself is designed to

promote free sharing of information so as to narrow the issues and limit unfair surprise. It is a tool which serves each litigant and promotes judicial economy. The board cites *Schultz v. Board of Supervisors of Jackson Township*, 95 Pa. Commonwealth Ct. 550, 505 A.2d 1127 (1986), to support its position. We believe *Schultz* is easily distinguishable from this case. *Schultz* involved the Right To Know Act (Act)[2]. In *Schultz,* the appellants petitioned the common pleas court under Section 4 of the Act[3] alleging a right to inspect the public records of the township relating to expenditures made by the Board of Supervisors. The appellants, in that action, served a set of interrogatories on the Board of Supervisors which objected on the grounds that discovery was not available under the Act. Although we affirmed the trial court we did so after holding that the court erred when it ruled that discovery was available to parties proceeding under *that Act*. This ruling was based on Section 4 of the Act which provides for an appeal from the denial of access to information as the *exclusive* remedy for one denied the right to examine the records. In sum, we determined that the discovery rules were not available in that case because information which would have been obtained through discovery was the exact information which was the subject of the action brought under the Act and obtaining that information must be done under the Act alone. Here, a trial court conducting a hearing pursuant to the Local Agency Law was unable to make a determination without additional evidence. Determining that the record below was incomplete it conducted a *de novo* review. The only other alternative at the trial court's disposal was for it to remand to the Board but it was not, we believe, re-

---

[2] Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§66.1-66.4.

[3] 65 P.S. §66.4.

quired to do so. The trial court's refusal to avail itself of that option and instead direct discovery is not error.

Similarly, with respect to the trial court's approval of MJN's motion for summary judgment, we note that a *de novo* hearing cannot be conducted in a vacuum devoid of any rules of procedure. We agree with the trial court that the Local Agency Law could not have contemplated that courts were precluded from dismissing a matter which was lacking in any genuine issue of material fact. The alternative would be to proceed to the conclusion of a proceeding whose result must already be determined and could not be altered.

Moving to the merits of the Board's appeal, the issue, as posed by the Board, is whether the roles played by the attorney advising the Board and the attorney prosecuting the case at the administrative level were intertwined so as to create a conflict of interest and a commingling of prosecutorial and adjudicatory functions and, if so, whether this violates the due process rights of a student facing a thirty day suspension. Our research reveals that whether a student's due process rights are violated depends upon many factors including the length of this proposed suspension, and the degree of commingling of prosecutorial and adversarial functioning. The Board points out that the U. S. Supreme Court and the United States District Court for the Western District of Pennsylvania have made it clear in earlier opinions that a student who is facing a suspension is not necessarily entitled to the degree of procedural safeguards that an adult who is facing a loss of livelihood is entitled to. *See Goss v. Lopez,* 419 U.S. 565 (1975); *Alex v. Allen,* 409 F. Supp. 379 (W.D. Pa. 1976); *Sill v. Pennsylvania State University,* 462 F.2d 463 (3rd Cir. 1972). The Board introduces irrelevant issues when it argues that MJN is not entitled to the degree of due process that adults facing similar situ-

ations with respect to their employment are entitled. Basic procedural due process must be afforded all students facing suspensions of three days or more according to *Goss*. In *Sill* and *Alex,* and also in *Goss,* the basic elements of notice and the opportunity to be heard by a fair and impartial tribunal were all considered prerequisites to a fair hearing. Thus, the issue here is not whether MJN received every procedural safeguard possible but whether he received basic due process requirements. Whenever a commingling issue is raised it raises the question of whether the party on whose behalf the hearing is held was given a fair hearing before a fair tribunal—a basic due process right for adults and children. Thus, if we find that impermissible commingling occurred we must find that MJN was denied due process. The issue of commingling has been addressed by this Court on many occasions and this Court has held that an adversarial/prosecutorial posture which creates even the appearance of impropriety and denial of a fair hearing is unacceptable and a violation of due process. We believe that two cases are most applicable to the set of facts and circumstances before us: *Sultanik v. Board of Supervisors of Worcester Township,* 88 Pa. Commonwealth Ct. 214, 488 A.2d 1197 (1985) and *Goldberg v. Commonwealth of Pennsylvania, State Board of Pharmacy,* 49 Pa. Commonwealth Ct. 123, 410 A.2d 413 (1980), both were cited by the trial court in its opinion. In *Goldberg,* the legal advisor for the State Board of Pharmacy was from the same legal branch as the prosecuting attorney and was the direct supervisor of the prosecuting attorney. This, we ruled, created a susceptibility that the proceedings would be subject to prejudice and, therefore, was improper. Here, Mr. Stefanko, the prosecuting attorney, is supervisor to Mr. Dille, the attorney acting as the advisor to the Board. Both are outstanding members of the Bar

and dedicated public officials. But, as President Judge CRUMLISH noted in *Goldberg,* proof of actual bias is not necessary. In *Sultanik,* however, we reemphasized our earlier ruling that two attorneys in the same branch of a state governmental agency did not create a per se occurrence of impermissible commingling. Although dictum in *Sultanik* discusses certain older state agency cases where a showing of actual bias was required, *Sultanik* actually involved a municipal zoning hearing board and held that impermissible commingling existed, without any need to show actual bias, when a legal adviser to the board was a member of the same law firm as the attorney who represented the municipality's adversary position before the board. That *Sultanik* situation is analogous to the present case, involving a commingling of prosecutorial and advisory functions by attorneys who both were from the same legal office of the Board of Education. In drawing from both *Goldberg* and *Sultanik* we hold that despite the practicalities involved, when the legal staff of a public agency consists of two attorneys, one which supervises the other, and while one acts in his customary capacity as advisor to the Board the other acts as prosecutor, impermissible commingling has occurred. To hold otherwise would ignore the realities involved in supervisor/supervisee relationships and basic human nature. This ruling does not abandon the *Sultanik* principle involving public agency legal staff practicalities; however, it does act to limit the effect of *Sultanik* to situations in which the agency's legal staff extends beyond the bounds of one supervisor and one subordinate. Accordingly, inasmuch as the basic facts revolving around MJN's access to the computer system are in dispute and were raised at every level of the proceedings, we believe that this commingling has crossed the threshold and violated due process. *Philadelphia Commission on Human Relations*

*v. Gold,* 95 Pa. Commonwealth Ct. 76, 503 A.2d 1120 (1986). We are convinced that the Board "in permitting the exercise of dual control over both the prosecutory and adjudicatory operations did not *reasonably safeguard* the appellee's right to a fair and unbiased adjudication." *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971).

Finally, the Board asks that we reverse the trial court's determination to dismiss the motion for summary judgment rather than to remand the matter back to the Board to correct the constitutional infirmities of the prior proceeding. MJN argues that the earlier proceedings have created a bias in the minds of the Board members and thus a remand would not cure the problem that he is deprived of a fair hearing before a fair tribunal. The trial court ordered MJN reinstated as a student and refused to remand. The practice of this Court is to remand to the administrative tribunal in such situations because of our belief that the integrity of the administrative process must be upheld. Although we have determined here that the Board impermissibly commingled the functions of their staff counsel, we do not believe that this standing alone indicates a purposeful disregard of MJN's due process rights, especially at a time when the permissible bounds of commingling are being defined. Thus, we remand the matter to the trial court with directions to that court to remand the proceedings back to the Board for the purpose of rectifying the commingling problem in a manner consistent with this opinion. We reject MJN's argument that the Board because of its alleged notions of MJN's guilt or its past failures to adhere to procedural due process is grounds for a conclusive reversal rather than a remand.[4] The rec-

---

[4] *See Donnon; Philadelphia Commission on Human Relations,* and *Goldberg.*

ord shows that the Board proceedings were truly adversarial but not necessarily hostile. In addition, we may take judicial notice, as the Board points out, that many members of the Board at the time of the Board proceedings are no longer members of that Board. Accordingly, we enter an order consistent with this opinion.

ORDER

Now, April 22, 1987, the order of the trial court, dated May 1, 1986, granting MJN's motion for summary judgment is vacated and the matter is remanded to the trial court for disposition in accordance with this opinion.

Jurisdiction relinquished.