605 A.2d 1243

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gary Lynn KAUFFMAN, the Altoona Area School District Authority, Dennis E. Murray, the Tyrone Area School Authority, Dr. William N. Miller, the Diocese of Altoona–Johnstown, the Most Reverend Joseph V. Adamec, Charmaine Gulliot and Sister Mary Ursula, Principal of Sacred Heart School, Appellees.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1991.

Filed March 30, 1992.

Darlee E. Sill, Asst. Dist. Atty., Hollidaysburg, for Comm., appellant.

Gerald J. Hutton, Pittsburgh, for Altoona Area School Dist. and Dennis E. Murray, appellees.

John W. Heslop, Jr., Altoona, for Tyrone Area School Authority and Dr. William N. Miller, appellees.

Louis C. Long, Pittsburgh, Walter F. Wall, Hollidaysburg, for Diocese of Altoona–Johnstown, Rev. Joseph V. Adamec, Charmaine Gulliot and Sister Mary Ursula, appellees.

Robert P. Petyak, Ebensburg, Michele H. Lally, Pittsburgh, for participating parties.

Stephen D. Wicks, Altoona, for Kauffman, appellee.

Before WIEAND, CIRILLO and MONTGOMERY, JJ.

WIEAND, Judge:

Where the District Attorney has prosecuted a person successfully for a criminal act, may information in the prosecution's file thereafter be discovered by one or more parties to a civil action brought to recover damages for the same conduct? The trial court held that the prosecutor's file was not immune from discovery, and the Commonwealth, by special allowance, appealed.

After Gary Lynn Kauffman had been found guilty of committing the crimes of indecent assault and corrupting a minor, the victim's parents initiated a civil action against Kauffman, the Altoona Area School District Authority,

Dennis E. Murray, the Tyrone Area School Authority, Dr. William N. Miller, the Diocese of Altoona–Johnstown, the Most Reverend Joseph V. Adamec, Charmaine Gulliot and Sister Mary Ursula, Principal of Sacred Heart School. In the civil action, the trial court entered an order directing the District Attorney of Blair County to provide, at an in camera meeting, its files pertaining to the investigation and prosecution of Kauffman so that the court could supervise discovery in the civil action. The Superior Court, on petition, specially allowed the Commonwealth to appeal from this order.

The Commonwealth argues that discovery of information in the District Attorney's file is barred by the Right to Know Law of June 21, 1957, P.L. 390, §§ 1–4, as amended, 65 P.S. §§ 66.1–66.4. After careful review, however, we can find no connection between the Right to Know Law and the issue raised in this appeal. Rather, the trial court's order must be reviewed to determine whether discovery is permitted by the Rules of Civil Procedure pertaining to discovery in civil actions. See: Pa.R.C.P. 4001 et seq.

■ Section 2 of the Right to Know Law [1] provides that the "public records" of an agency, as defined in section 1, shall be open for inspection and examination by any citizen of Pennsylvania. Section 1, however, excludes from the definition of public record "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties...." [2] The exclusive remedy provided by the statute for a citizen who has been denied access to agency records is a statutory appeal as provided in section 4.[3] Instantly, the Commonwealth relies upon the exclusionary language of section 1 of the statute to argue that the Right to Know Law bars litigants in civil actions from discovering information which is not open for public inspection under the

1. 65 P.S. § 66.2.
2. 65 P.S. § 66.1(2).
3. 65 P.S. § 66.4.

statute. However, the Commonwealth has been unable to point to any language in the statute and offers no other reasonable explanation which would make the Right to Know Law applicable to discovery proceedings under the Pennsylvania Rules of Civil Procedure. The reason is obvious. There is no connection between the two.

The defendants in this civil action were not seeking to exercise their rights as citizens to examine public records of the District Attorney. Rather, they had been named as defendants in a civil action and, as such, sought to invoke the discovery provisions of the Pennsylvania Rules of Civil Procedure to aid them in defending the action instituted against them. Because the Commonwealth has failed to make this distinction, it has erroneously relied on a decision of the Commonwealth Court which has no application to the order entered by the trial court in this case.

In *Shultz v. Board of Supervisors of Jackson Township,* 95 Pa.Cmwlth. 550, 505 A.2d 1127 (1986), citizens and taxpayers sought to examine township records pertaining to expenditures of township funds pursuant to the provisions of the Right to Know Law. They also sought to discover the same information under the Rules of Civil Procedure. Under these circumstances, the Commonwealth Court properly held that the discovery rules could not be used to thwart the provisions of the Right to Know Law. Therefore, the discovery rules could not be used in a statutory appeal to circumvent the provisions of the Right to Know Law, whose provisions alone determine questions of public access to agency records.

The instant action is not a proceeding under the Right to Know Law. Rather, it is a civil action for damages, and the issue to be decided is the scope of discovery allowed to the parties in that action by the Rules of Civil Procedure. The request for discovery here is supported by an underlying civil action. There was no such underlying action in *Shultz.* This distinction was recognized by the Commonwealth Court in *Pittsburgh Board of Public Education v. MJN by NJN,* 105 Pa.Cmwlth. 397, 524 A.2d 1385 (1987), where the

Court held that a trial court could order discovery in a de novo appeal from a School Board decision suspending a high school student. In rejecting an argument by the School Board that the trial court was without authority to order discovery, the Court said:

> Discovery itself is designed to promote free sharing of information so as to narrow the issues and limit unfair surprise. It is a tool which serves each litigant and promotes judicial economy. The Board cites *Shultz v. Board of Supervisors of Jackson Township,* 95 Pa.Commonwealth Ct. 550, 505 A.2d 1127 (1986), to support its position. We believe *Shultz* is easily distinguishable from this case. *Shultz* involved the Right to Know Act (Act). In *Shultz,* the appellants petitioned the common pleas court under Section 4 of the Act alleging a right to inspect the public records of the township relating to expenditures made by the Board of Supervisors. The appellants, in that action, served a set of interrogatories on the Board of Supervisors which objected on the grounds that discovery was not available under the Act. Although we affirmed the trial court we did so after holding that the court erred when it ruled that discovery was available to parties proceeding under that Act. This ruling was based on Section 4 of the Act which provides for an appeal from the denial of access to information as the exclusive remedy for one denied the right to examine the records. In sum, we determined that the discovery rules were not available in that case because information which would have been obtained through discovery was the exact information which was the subject of the action brought under the Act and obtaining that information must be done under the Act alone.

*Pittsburgh Board of Public Education v. MJN by NJN, supra,* 105 Pa.Cmwlth. at 403–404, 524 A.2d at 1388 (footnotes omitted).

The fact that the legislature excluded certain documents from public inspection does not mean that the legislature intended to bar the use of such information in judicial proceedings. The purpose of the Right to Know Law was

to make certain information available to members of the public. Whether information should be made available for use in court proceedings involves entirely different considerations. This was recognized in a well reasoned opinion by The Honorable R. Stanton Wettick in *Azen v. Lampenfield*, 18 Pa.D. & C.3d 574 (Allegheny Co.1981). In denying an argument similar to that relied upon by the Commonwealth in this case, Judge Wettick wrote:

> [T]he fact that the legislature does not require the city to make information available to the general public does not indicate that the legislature intended to bar the use of such information in court proceedings. Traditionally, public officials have been required to make relevant public information available to the litigants in court proceedings. On the other hand, traditionally it has been left to public officials to determine what public informa[t]ion shall be available to the members of the general public. Thus legislation designed to curb the unbridled discretion of the public official to exclude public information from the general public should not be construed to bar the disclosure of public information in judicial proceedings. The only purpose of the right to know legislation is to make more information available to the public. The question of whether information should be protected in court proceedings involves entirely different policy considerations that the legislature did not consider in enacting this right to know legislation. For this reason, we reject the city's position that the right to know legislation is the basis of any privilege.

*Id.* at 575–576. We agree fully with Judge Wettick's analysis and hold that the Right to Know Law does not bar a party in a civil action from discovering relevant information from the files of a government agency. To hold otherwise, would insulate from discovery all information possessed by governmental agencies, no matter how relevant the information might be, unless the same information were also available upon request to any and all citizens of the Commonwealth. Such a result clearly was not contemplated by

the legislature when it enacted the Right to Know Law. Indeed, such a result would not only emasculate the discovery provisions of the rules of civil procedure, but would also represent an unsound departure from established law.

Pa.R.C.P. 4003.1 permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." The Commonwealth has not alleged the existence of any privilege other than that supposedly contained in the Right to Know Law, and our own research discloses no absolute privilege constituting a total bar to the discovery of relevant information contained in the file of a public prosecutor.

■ The federal courts, on occasion, have identified a common law "executive" or "governmental" privilege which they have relied upon to protect information from being discovered during ongoing government investigations. Thus, in *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa. 1973), the federal court for the eastern district of Pennsylvania defined the "executive privilege" as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." *Id.* at 342 (footnote omitted). See generally: 81 Am.Jur.2d, Witnesses, §§ 287–290; 23 Am.Jur.2d, Depositions and Discovery, § 78; 8 J. Wigmore, Evidence, §§ 2378–2379 (McNaughton rev. 1961). This privilege, however, is not absolute but qualified; and, when asserted, requires the court to balance the government's interest in ensuring the secrecy of the documents whose discovery is sought against the need of the private litigant to obtain discovery of relevant materials in possession of the government. *Frankenhauser v. Rizzo, supra* at 343–344. See: *Reese v. City of Pittsburgh,* 1 Pa.D. & C.3d 704 (Allegheny Co.1976) (rejecting claim of governmental privilege where plaintiff, who was allegedly assaulted by police officer, sought access to police personnel records and internal affairs investigative reports). See also: *Crawford v. Dominic,* 469 F.Supp. 260 (E.D.Pa.1979). This balancing of interests frequently requires a hearing, and "[a] court may conduct an in camera

inspection of the documents in order to determine which should be released in the interests of justice despite a claim of government privilege." 23 Am.Jur.2d, Depositions and Discovery, § 78 at p. 420. Moreover, with respect to the "governmental" or "executive" privilege, it has been observed that "the great majority of cases that have considered the discoverability of law enforcement investigations have held that in general such discovery should be barred in ongoing investigations, but should be permitted when investigation and prosecution have been completed...." *Frankenhauser v. Rizzo, supra* at 343, citing *Wood v. Breier,* 54 F.R.D. 7 (E.D.Wis.1972).

■ At common law, there also existed a public interest privilege which prevented the disclosure of information regarding the commission of a crime which had been communicated to the prosecuting attorney by a citizen. See: *Vogel v. Gruaz,* 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158 (1884). This privilege, which has become known as the "informer's privilege," was at one time considered to be absolute. See: *Vogel v. Gruaz, supra.* See also: *Lewis v. Roux Trucking Corp.,* 222 App.Div. 204, 226 N.Y.S. 70 (1927); *Worthington v. Scribner,* 109 Mass. 487 (1872); *Meaney v. Loew's Hotels, Inc.,* 44 Pa.D. & C.2d 764 (Pike Co.1968). More recent decisions, however, have construed the "informer's privilege" to be a qualified privilege. See: *Westinghouse Electric Corp. v. City of Burlington, Vermont,* 351 F.2d 762, 767–768 (D.C.Cir.1965); *Grodjesk v. Faghani,* 104 N.J. 89, 97, 514 A.2d 1328, 1332 (1986); *Conlon v. Dean,* 14 Mich.App. 415, 418–24, 165 N.W.2d 623, 625–627 (1969); *Caputo v. WYTV Television Station,* 35 Pa.D. & C.3d 253, 255–256 (Mercer Co.1983). In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court of the United States described the informer's privilege in the following manner:

What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement

of that law. *Scher v. United States*, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 [1938]; *In re Quarles and Butler*, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 [1895]; *Vogel v. Gruaz*, 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Id.* at 59–61, 77 S.Ct. at 627–628, 1 L.Ed.2d at 644–645 (footnotes omitted). See also: *Holman v. Cayce*, 873 F.2d 944, 946–947 (6th Cir.1989) (applying informer's privilege in civil case); *Dole v. Local 1942, International Brotherhood of Electrical Workers, AFL–CIO*, 870 F.2d 368, 372–373 (7th Cir.1989); *Westinghouse Electric Corp. v. City of Burlington, Vermont, supra* at 767–770. See generally: 8 J. Wigmore, Evidence, §§ 2374–2375 (McNaughton rev. 1961); Annotation, Government's Privilege To Withhold Disclosure Of Identity Of Informer—Federal Cases, 1 L.Ed.2d 1998 (1957); Annotation, Application, In Federal Civil Action, Of Governmental Privilege Of Non-disclosure Of Identity Of Informer, 8 A.L.R.Fed. 6 (1971).

■ In the instant case, the Commonwealth did not assert either a common law governmental/executive privilege or an informer's privilege. Therefore, they were not considered by the trial court. They also have not been advanced on appeal. The failure to assert a privilege constitutes a waiver thereof. "A claim of privilege may be waived in discovery proceedings as well as during the trial of an action. Preclusion of disclosure in discovery proceedings on the ground that a matter is privileged is not automatic; the privilege must be claimed, and a failure to claim the privilege waives it." 10 Goodrich–Amram 2d, Depositions and Discovery, § 4011(c):3 at p. 307. See: *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583, 586–587 (D.D.C.1975) (defendant's failure to assert attorney-client privilege constitutes waiver of privilege); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1160 (D.S.C.1974) (if attorney-client privilege is not claimed at time of discovery request, or at least when document is presented to court for in camera review, privilege will be considered waived by implication); *Commonwealth v. Clark*, 347 Pa.Super. 128, 131, 500 A.2d 440, 441 (1985), *appeal dismissed*, 516 Pa. 16, 531 A.2d 1108 (1987) (defendant could waive privilege against disclosure of confidential communication to spouse by failing to object to wife's testimony at trial).

■ The Commonwealth has not alleged that any harm would result from the present disclosure of relevant information in the District Attorney's files. Moreover, if specifically privileged information should be discovered in the District Attorney's files, the trial court's order is such that the court will be able to protect the confidentiality of such information by enforcing the privilege.

Because there is no applicable privilege in the Right to Know Law, and because the Commonwealth has demonstrated no other valid basis for reversing the order of the trial court, we reject its appeal.

Order affirmed.