J-E02003-17

2018 PA Super 261

JOHN M. GREGURY AND BARBARA J. ROBEY : IN THE SUPERIOR COURT OF
:                                       PENNSYLVANIA
Appellants :
:
v. :
:
: No. 1467 MDA 2015
SHIRLEY M. GREGURAS AND ESTATE :
OF ADOLF GREGURAS, AND JAMES :
T. YINGST AND GUTHRIE, :
NONEMAKER, YINGST & HART :

Appeal from the Judgment Entered August 17, 2015
In the Court of Common Pleas of York County
Civil Division at No(s):  2009-SU-003228-01

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

DISSENTING OPINION BY OTT, J.:          **FILED SEPTEMBER 20, 2018**

I respectfully dissent.  While the Majority provides a thoughtful analysis of at-trial waiver of the attorney-client privilege, I believe the trial court did not abuse its discretion in denying the motion for mistrial in light of 42 Pa.C.S. § 5928, which permits the privilege to be waived "upon the trial by the client," and the circumstances of this case.  Furthermore, I am of the view that the trial court properly refused to admit into evidence unsigned, undated handwritten documents offered to prove Decedent's testamentary intent on grounds of hearsay and relevancy. Therefore, I would affirm the judgment entered upon the grant of nonsuit in favor of Appellees.

The issue of attorney-client privilege was present in this case from its very inception. Decedent's will, prepared by Yingst, was executed in March, 2000.[1] Based upon Appellants' alternative allegations of breach of contract (third party beneficiary) and fraud in the amended complaint, Appellants needed to prove either that Yingst **failed to adequately advise** Decedent and Shirley regarding the effect of jointly-held property on the estate plan, or that Shirley committed fraud by manipulating assets into jointly-held accounts with right of survivorship to frustrate Decedent's testamentary intent.[2]

Section 5928 of the Judicial Code, governing confidential communications to attorney, provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, **unless in either case this privilege is waived upon the trial by the client**.

42 Pa.C.S. § 5928 (emphasis supplied).

Pennsylvania law recognizes that "the right to assert the [attorney-client] privilege is that of the client." **Commonwealth v. McKenna**, 213 A.2d

---

[1] In March, 2000, Decedent would have been 80 years of age, based on his May, 1919 birth date. **See** Plaintiff's Exhibits 5 and 6. Shirley would have been 75 years of age, as she was 90 years old at the time of the March, 2015 trial. **See** N.T., 3/16-18/2015, at 58.

[2] It is unclear whether Appellants are contending Shirley acted fraudulently as to all jointly held assets or only as to the two certificates of deposit titled jointly with right of survivorship that were opened in 2004. **See e.g.,** Amended Complaint, 9/1/2010, at ¶¶ 29 and 31; Appellants' Brief at 11.

223, 226 (Pa. Super. 1965), *citing* **Estate of Dowie**, 19 A. 936 (Pa. 1890). *See also Maleski by Chronister v. Corp. Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Cmwlth. 1994) ("The purpose of the attorney-client privilege is to benefit the client, and accordingly, the client is the holder of the privilege."). Furthermore, "[t]he failure to assert a privilege constitutes a waiver thereof." *Commonwealth v. Kauffman*, 605 A.2d 1243, 1248 (Pa. Super. 1992). In addition, "absent other considerations, a right or privilege once waived is always waived and [] the defendant who waives a right or privilege cannot thereafter object to the use that is made of the formerly privileged communications." *Commonwealth v. Rosen*, 42 A.3d 988, 995 (Pa. 2012) (citation omitted).

In this case, attorney-client privilege arose during pre-trial discovery in two contexts. First, Yingst asserted the privilege regarding any communications with Shirley and Decedent. Second, Yingst did not assert the attorney-client privilege regarding communications with Shirley when her daughter was also present. Appellants' counsel argued to the court prior to trial that there were "irregular assertions of attorney client privilege" where Yingst "disclosed some content of communications; but selectively declined to disclose content when he was '*not certain whether [Shirley's] daughter had*

*been present*'" and, therefore, "negative inferences are warranted from the selective attorney client communication disclosures."[3]

At trial, in his opening statement, Appellants' counsel discussed the attorney-client privilege, as follows:

> ... Defendant Yingst claimed that he had gave [sic] a specific speech to each client regarding types of property and other such matters. However, when he was asked to provide a recitation of that speech in deposition, he said that it varied based on questions asked and declined to give one.
>
> He admitted differences in simultaneously executed wills by spouses was unusual. He then asserted attorney/client privilege as to what was or was not stated by [Decedent] or [Shirley] as to any information provided to them by either.
>
> This brings up a point, and I note it in the issue of credibility. **Both Defendants exercised attorney/client privilege inconsistently in their depositions, and I believe in their testimony they will have to admit that they disclosed contents of communication regarding certain matters and chose not to regarding others. I believe that you may consider that in assessing their credibility.**

N.T., 3/16-18/2015, at 37 (emphasis added). Thereafter, counsel for Yingst, in his opening, told the jury:

> … You've got Shirley, who is going to testify. She recalls the meeting with Mr. Yingst. They went in to see him to draft wills. They were going to take care of each other. And in the event they both died at the same time, it would just spill down to their children, plain and simple.

---

[3] Plaintiffs' Trial Brief, 3/10/2015, at 12, 14 (capitalization removed; emphasis in original); Plaintiffs' Brief in Opposition to the Motions for Summary Judgment, 5/1/2014, at 12, 14 (capitalization removed; emphasis in original).

> You're going to hear Mr. Yingst testify that he had the meeting with [Decedent]. He had the meeting with Shirley. They described what their asset picture was, that Mr. Yingst said you understand jointly held assets, joint bank accounts, your checking account, savings account, anything that you are both owners on, they don't come inside the will.

*Id.* at 51–52.

Following the conclusion of Yingst's counsel's opening, and after the jury had been excused for lunch, Appellants' counsel moved for a mistrial, based on Yingst's counsel's implication that Shirley would waive the attorney-client privilege and Appellees would testify on matters they claimed were privileged at their depositions. The trial court entertained argument and thereafter denied the motion, and allowed the trial to proceed. Based upon my review, I find no basis upon which to disturb the decision of the trial judge.

"Generally, the granting or refusal of a mistrial is a matter within the discretion of the trial judge, and his or her decision will not be overruled by an appellate court except for manifest, clear, or palpable error amounting to an abuse of discretion." ***Bugosh v. Allen Refractories Co.***, 932 A.2d 901, 914-15 (Pa. Super. 2007) (quotations and citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1046 (Pa. 2003).

- 5 -

Here, for good reason, Shirley did not waive the privilege prior to trial since, once waived, she would not be able to reinvoke it. *See Rosen, supra*, 42 A.3d at 995. However, as provided by statute, Shirley was free to waive her attorney-client privilege "upon the trial." 42 Pa.C.S. § 5928. Therefore, it was reasonable that she would waive her privilege, if at all, only when Appellants' counsel argued to the jury in his opening statement that Appellees "exercised attorney/client privilege inconsistently in their depositions" and the jury "could consider that **in assessing [Appellees'] credibility**." N.T., 3/16-18/2015, at 37 (emphasis added). Under these circumstances, counsel's own trial strategy cannot create "unfair surprise." *Id.* at 66.

Furthermore, it is clear that Appellants' counsel believed **prior** to trial that there had been "irregular" assertion of attorney-client privilege by Appellees during discovery, and raised this argument on three separate occasions — in deposing Yingst (Yingst Deposition, 9/13/2012, at 58) in Appellants' brief in opposition to the summary judgment motions filed by Shirley and Yingst, and in Appellants' trial brief. As discussed above, Appellants' counsel argued in his opening statement that Appellees' inconsistent exercise of attorney-client privilege was a credibility matter. Significantly, Appellants' counsel explained to the court at sidebar that he "did not file a motion to overrule the assertion of attorney/client privilege for the simple reason that we are perfectly content to bind the parties to the testimony that they gave during the depositions." N.T., 3/16-18/2015, at 66.

Given Appellants' counsel's belief there were "irregular" assertions of the privilege in discovery and his trial strategy to attack Appellees' credibility, and in light of Section 5928 that allows waiver of the privilege "**upon the trial**," Appellants' counsel had every reason prior to trial to file a motion *in limine* to preclude Shirley's waiver of the attorney-client privilege at the time of trial. He did not do so.

The Majority states that Section 5928 is not dispositive of the issue and analyzes the timing of the waiver in this case "in the context of our discovery and pretrial rules."[4] I disagree with this approach and believe the cases cited by the Majority are not helpful to the circumstances of the instant case.

The Majority cites **Salsman v. Brown**, 51 A.3d 892 (Pa. Super. 2012),[5] which relied on **Nationwide Mutual Ins. Co., v. Fleming**, 924 A.2d 1259, 1265 (Pa. Super. 2007), for the proposition that "A litigant attempting to use attorney-client privilege as an offensive weapon by selective disclosure of favorable privileged communications has misused the privilege; waiver of the privilege for all communications on the same subject has been deemed the appropriate response to such misuse." **Salsman**, 51 A.3d at 895 n.3. Here, however, the issue does not concern the sanction of waiver for selective

_____

[4] Majority Opinion at 14.

[5] **See** Majority Opinion at 15.

disclosure, but rather concerns Shirley's right to voluntarily waive the privilege "upon the trial" pursuant to 42 Pa.C.S. § 5928.

Likewise, the Allegheny County case, **Haas v. Bowman**, 62 D. & C. 4th 1 (Allegheny Co. 2003), and certain federal cases cited therein, which are discussed by the Majority,[6] are inapposite. In **Haas**, the issue of at-trial waiver of Fifth Amendment privilege arose in the context of a request for sanctions against defendants who had asserted their Fifth Amendment privilege in response to discovery requests. The Honorable R. Stanton Wettick opined that "ordinarily, a party who has avoided discovery by asserting the Fifth Amendment privilege will not be permitted on the eve of trial to waive his or her Fifth Amendment protections for the purpose of testifying at trial." **Id.** at 15. Judge Wettick further explained:

> **at the request of a party**, a court may set a time, based on a need of the parties to complete discovery, after which the party who has invoked the Fifth Amendment privilege will be barred from offering at trial his or her testimony on matters for which the Fifth Amendment was invoked to prevent discovery.

**Id.** (emphasis supplied), *citing* **United States v. 4003-4005 Fifth Avenue,** 55 F.3d 78, 85-86 (2d Cir. 1995); **SEC v. Graystone Nash Inc.**, 25 F.3d 187, 191-92 (3d Cir. 1994); **Gutierrez-Rodriguez v. Cartagena**, 882 F.2d 553 (1st Cir. 1989); **Dunkin' Donuts Inc. v. Taseski**, 47 F. Supp.2d 867, 872-

---

[6] **See id.** at 15-16.

73 (E.D. Mich. 1999). Here, in contrast to **Haas** and the cited federal cases, there was no request for a pretrial ruling to preclude Shirley's waiver at trial.

The cases relied upon by Appellants in their brief,[7] and discussed by the Majority,[8] are also unpersuasive in my view. **Domako v. Rowe**, 475 N.W.2d 30 (Mich. 1991), involved a Michigan statute, MCR 2.314(B)(1), that required a party to timely assert the physician-patient privilege, or the privilege would be lost. The **Domako** Court held the plaintiff had waived the physician-patient privilege when she signed authorization forms permitting the release of medical information, and she could not assert the privilege thereafter. In its discussion, the Michigan Supreme Court noted MCR 2.314(B)(2) precludes waiver of physician-patient privilege regarding medical information once asserted by a party, and that the statute requires assertion or waiver **at the pretrial stage**. **Id.** at 32 n.1, 35. Here, in contrast to the Michigan statute, 42 Pa.C.S. § 5928 allows waiver of the attorney-client privilege "upon the trial."

Furthermore, in **Seattle Northwest Sec. Corp. v. Sdg Holding Co.**, 812 P.2d 488 (Wash. App. 1991), and **Int'l Tel. & Tel.Corp. v. United Tel. Co. of Florida**, 60 F.R.D. 177 (M.D. Fla. 1973), the issue of attorney-client privilege was raised and addressed by the court **before** trial. In **Seattle**

---

[7] **See** Appellants' Brief, at 32.

[8] **See** Majority Opinion at 16-18.

*Northwest*, the trial court entered an order of contempt and imposed sanctions, including default judgment, for defendant's failure to comply with discovery orders. The Court of Appeals of Washington reversed and held the discovery sought was protected by the attorney-client privilege, and remanded for a factual hearing as to whether respondent's other contentions justified an order allowing discovery of the privileged documents or testimony. The court further required that on remand, defendants make an election whether or not to call counsel to testify. Similarly, in *Int'l Tel. and Tel. Corp.,* the issue of waiver arose in the context of a motion to compel discovery, and the Florida federal district court instructed, "if the defendant intends to waive the privilege at trial by introduction of evidence within the privilege, then the defendant will be required to allow discovery with regard to matters material to that testimony." 60 F.R.D. at 186. Thus, these cases discuss at-trial waiver in the context of discovery disputes.

The Majority likens the instant situation to circumstances where there is late amendment of an expert report or an expert attempts to testify beyond the scope of the expert report.[9] The Majority also relies on the duty to supplement ongoing discovery to challenge Shirley's at-trial waiver. However, there is a substantive difference between the statute and discovery rules. While it may be laudable to require a party to choose between asserting or

---

[9] *See* Majority Opinion at 19.

waiving privileged communications prior to completion of discovery, that policy goes beyond our discovery rules and our statutory privilege. This Court should not superimpose discovery rule concepts upon Section 5928 but instead leave that consideration to the Legislature or the Rules Committee.

The record also reflects that during argument on the motion for mistrial, Appellants' counsel requested a preclusion order or postponement of the trial to depose Shirley and Yingst since they were no longer asserting the privilege. *See* N.T., 3/16-18/2015, at 65. However, as pointed out by the trial judge in his Rule 1925(a) opinion, there had been six years of discovery in this case.[10] Thus, Appellants' counsel had ample opportunity prior to trial to resolve the potential issue of waiver of attorney-client privilege that is permitted under our statute.

Finally, I note that we apply a deferential standard of review to the denial of a motion for mistrial and, for the reasons set forth above, I discern no abuse of discretion by the trial court in denying Appellants' motion for mistrial and requests for a preclusion order or continuance.[11] I disagree with the Majority that "countenancing what occurred herein would only encourage

---

[10] Trial Court Opinion, 8/10/2015, at 5 (unnumbered).

[11] Because I do not believe the trial court erred in denying the motion for mistrial and alternative requests for relief, I do not reach the harmless error analysis.

- 11 -

parties to use privilege, which is not favored, to flout the discovery rules in order to gain an unfair tactical advantage."[12]  The Majority has taken the position that last minute at-trial waiver of the attorney-client privilege violates discovery.  I believe, however, that given Appellants' counsel's stated intent in his opening to use Appellees' inconsistent exercise of the privilege to attack credibility, this case does not represent a case where we should adopt the Majority's position against late waiver.  Rather, I believe that affirmance upholds the language of the statute and is warranted under the facts of this case.

Nor do I agree that the trial court abused its discretion in refusing to admit into evidence certain unsigned, undated handwritten notes proffered by Appellants.  These documents are described by Appellants as "documents which identified Decedent's assets and one on which there was a handwritten calculation of what half of those assets would be."  Appellants' Brief at 12.

Prior to trial, Shirley and Yingst each filed a motion *in limine* to preclude the handwritten documents and oral testimony that they anticipated Appellants would seek to introduce at trial to show Decedent's testamentary intent.  Regarding the handwritten notes, Appellants responded, "All are relevant and subject of proper authentication." Plaintiffs' Response to All Defendants' Omnibus Motions *in Limine*, at 4.  Appellants maintained that

---

[12] Majority Opinion at 22.

"[t]he handwritten documents separately and together support the express language of the will as intending ¼ of the joint property to pass to each of the Plaintiffs." *Id.* at 6. The pre-trial judge granted Appellees' motions *in limine,* ruling that the handwritten documents were inadmissible on the grounds of authentication, hearsay, and relevance. *See* Order Granting Motions *in Limine*, 3/6/2015.

While the coordinate jurisdiction rule applied to the pre-trial order,[13] Appellants' counsel, at trial, made supplemental proffers of authentication evidence for the handwritten documents. *See* N.T., 3/16-18/2015, at 292-293, 405-407. Following the testimony of John Gregury's wife, Eileen, Appellants' counsel acknowledged that there was "an exclusionary order for use of documents for the purpose of showing [Decedent's] intent with regard to the disposition of property," but sought to use two of the handwritten documents to "show value of the estate." N.T., 3/16-18/2015, at 290. Appellants' counsel proffered additional authentication testimony, and argued

---

[13] "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hosp*., 836 A.2d 25, 29 (Pa. 2003). "Departure from the rule is allowed in 'exceptional circumstances' when there has been a change in the controlling law or where there was a substantial change in the facts or evidence." *Id.* (citation omitted). "In sum, while a judge must in most circumstances defer to the prior decision of another judge of coordinate jurisdiction, he or she is not required to do so in the limited and exceptional situation in which, *inter alia*, the prior judge's order is clearly erroneous and would result in a manifest injustice." *Id.* at 30.

the date of death balances on the 2007 bank statements correlated to the numbers on the handwritten documents found in Decedent's house in 2008. Yingst's counsel objected, stating that the documents were undated, that they did not correlate, and that aside from the authentication issue, the documents were inadmissible based upon hearsay and relevance. The trial judge rejected the proffer and adhered to the pre-trial judge's ruling.

Later in the trial, after the testimony of Barbara Robey's husband, Wayne, Appellants' counsel made another proffer, offering additional authentication evidence that Wayne Robey would testify that Decedent gave him a piece of paper in 2000, with names of banks, and "[i]t had amounts in the bank, and it was on the same stationery as the other pieces of paper that John [Gregury] found in the house" in 2008. *Id.* at 406. The trial judge sustained Yingst's counsel's objection and allowed his prior ruling to stand.

Our standard of review is well settled:

> Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Czimmer v. Janssen Pharm., Inc.*, 122 A.3d 1043, 1058 (Pa. Super. 2015) (citation omitted).

Here, Appellants proffered additional testimony of witnesses who could identify the handwriting and stationery as Decedent's for authentication purposes, and therefore, I recognize there is no issue regarding

authentication. However, aside from authentication, the trial court excluded the documents on grounds of hearsay and relevancy.[14]

Under the Rules of Evidence, an out of court statement that is offered for the truth of the matter asserted is excluded as hearsay. Pa.R.E. 801(c). Statements include an oral or written assertion. Pa.R.E. 801(a). Hearsay is inadmissible unless an exception applies. Pa.R.E. 802.

Appellants' proffered evidence included one handwritten document that listed amounts of various assets and calculated one-half value of those assets. While the Majority finds that the handwritten documents are not hearsay because Appellants offered the handwritten documents "for the fact of their creation,"[15] Appellants argue in their appellate brief these handwritten documents were proffered as proof of Decedent's testamentary intent.[16] Therefore, because Appellants offered the handwritten documents and

_____

[14] In their brief, Appellants only address authentication and do not address the grounds for exclusion based on hearsay and relevance. **See** Appellants' Brief, at 26-28.

[15] Majority Opinion at 28.

[16] **See** Appellants' Brief at 23 ("The Trial Court Err[ed] in Precluding Oral and Written Evidence of [Decedent's] Testamentary Intent"); **id.** at 26 ("Plaintiffs proffered notes they found at [Decedent's] house which included an accurate list of his assets with calculations consistent with the ½, ¼, and ¼ distribution scheme which was called for in the will."); **id.** at 28 ("The handwritten documents separately and together support the express language of the will as intending all property of whatever kind to [Shirley] and each of the Plaintiffs in the designated portions.").

calculations to show Decedent's testamentary scheme — that is, the truth of the matter asserted — I conclude the documents were hearsay.

While the hearsay rule is subject to exceptions, none appears to be applicable to these documents that are unsigned, undated, without a clear purpose and meaning. The Majority points to Pa.R.E. 803(3), which provides an exception for the declarant's then-existing state of mind.[17] However, as more fully discussed below, Decedent's state of mind is not evident from the documents. Therefore, I do not agree that the exception applies herein.

With regard to the issue of relevancy, Pa.R.E. 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Furthermore, Pa.R.E. 402 states that "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Here, the handwritten documents were not relevant because the date and reason for creation of the documents cannot be determined.

Although the Majority posits it would be possible to determine a date for the documents based upon other evidence of bank statement balances,[18] I do not believe the trial court was required to accept the handwritten documents

---

[17] *See* Majority Opinion at 28 n.8.

[18] *See* Majority Opinion at 28 n.7.

- 16 -

based upon additional, proffered bank statements in the case. Moreover, the reason for the documents is an unanswered question.

Appellants argued the documents show Decedent's express intent had been frustrated because he did not understand right of survivorship of joint property. However, the documents do nothing to advance that issue. Even if the trial judge had determined that the documents were properly authenticated and that they correlated to the 2007 bank account balance statements, the documents were properly excluded because they are not relevant to the issue of what happened in 2000, when Decedent and Shirley met with Yingst.

The Majority states that "Once it was demonstrated that Decedent was the author of the documents, their relevance lay in the fact that Decedent thought there was a reason to calculate the value of one-half of the joint assets. Such evidence was probative on the issue whether Attorney Yingst advised Decedent and Shirley about jointly-held property."[19] However, these documents only show a calculation for one-half of the joint assets. There is no dispositive language and no calculation for a one-fourth value of the joint assets. As such, these documents are not relevant to the issue of what advice Decedent received or understood regarding **the right of survivorship in jointly-held property**.

---

[19] **Id.** at 28 n.8.

Furthermore, even if the documents show Decedent did a calculation, the document is not probative because it is impossible to tell whether the calculations stemmed from Yingst's failure in 2000 to advise Decedent and Shirley that property titled as joint tenants with right of survivorship would not pass under the will, **OR** from Shirley's actions to defraud Decedent, **OR** from other reasons, such as Decedent and Shirley either misapprehending Yingst's advice **OR** forgetting Yingst's advice in the four years between the execution of their wills and the creation of the 2004 jointly-held accounts. Therefore, in my view, the documents were inadmissible on grounds of hearsay and relevance, and the trial court acted properly within its discretion in refusing to admit the handwritten documents into evidence.

Accordingly, I dissent.

President Judge Gantman, Judge Lazarus and Judge Dubow join this dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018